# EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CAPGEMINI U.S. LLC, | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 1:13-CV-01727-ODE |
| | ) | |
| -against- | ) | |
| | ) | |
| SURESH KANCHUSTAMBHAM, ASHOK | ) | |
| LAKSHMAN, K-MACS LLC, and MADHURI | ) | |
| BONDADA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AFFIDAVIT IN SUPPORT OF PRE-JUDGMENT ATTACHMENT</u>

STATE OF NEW YORK   )
                       ) SS.:
COUNTY OF NEW YORK  )

Rick Hymer, being duly sworn, deposes and says, under penalties of perjury, as follows:

      1.     I am a Vice President of plaintiff Capgemini U.S. LLC ("Plaintiff" or "Capgemini"). I submit this affidavit in support of Capgemini's motion, pursuant to Fed. R. Civ. P. 64(a) and O.C.G.A. § 18-3-1, et seq., for pre-judgment attachment against (i) certain real property in Georgia owned by defendants Suresh Kanchustambham ("Suresh") and/or Suresh's wife, defendant Madhuri Bondada ("Madhuri"), and (ii) certain real property in Georgia owned by defendant Ashok Lakshman ("Ashok"). Capgemini also seeks a temporary restraining order and/or an injunction enjoining Suresh, Madhuri and Ashok from selling their respective properties. The facts set forth herein are based on my personal knowledge based on my role in

overseeing the investigation of defendants' wrongdoing as described herein and involvement in the results thereof, as well as on my review of the books and records of Capgemini.

2.     As more fully set forth below, <u>immediate</u> relief is needed because there is currently a pending sale on certain property owned by Suresh and/or Madhuri, with a closing date for such sale scheduled for on or before <u>June 15, 2013</u>.  Suresh and Madhuri (as well as Ashok) have moved, are about to move or have absconded to India, apparently to escape liability for the claims asserted in this action.   Absent pre-judgment attachment, any judgment will likely be uncollectable as defendants' assets will be moved to India and/or otherwise be extremely difficult to trace or locate.

## A.     **INTRODUCTION.**

3.     In this action, as is more fully set forth in the Complaint, a true and correct copy of which is annexed hereto as Exhibit 1 (the "Complaint"), Capgemini seeks damages against defendants Suresh, Madhuri, Ashok and K-Macs LLC ("K-Macs") (collectively, "Defendants"), who are all former employees or contractors of Capgemini and/or their agents, for wrongfully competing with Capgemini to obtain business from a company known as BidReady LLC ("BidReady"), wrongfully diverting corporate opportunities and monies away from Capgemini, and wrongfully utilizing Capgemini's employees and/or contractors to do so, all for Defendants' benefit and not for the benefit of Capgemini.   In the Complaint, Capgemini asserts claims for breach of contract, breach of fiduciary duty, unjust enrichment, fraud and equitable relief.

4.     As set forth above, Suresh, Madhuri and Ashok all own real property in Georgia.  In particular, (i) Suresh and Madhuri own real property at 770 Pimlicon Place, Suwanee, GA 30024 (the "Pimlicon Place Property") (<u>see</u> Exhibit 2 annexed hereto), (ii) Suresh also owns real property at 655 Earlham Drive, Suwanee, GA 30024 (<u>see</u> Exhibit 3 annexed

{N0345358; 1}

hereto), and (iii) Ashok owns real property at 615 Earlham Drive, Suwanee, GA 30024 (see Exhibit 4 annexed hereto).

5.    As set forth more fully below and in the accompanying Brief, Suresh, Madhuri and Ashok have each moved, are about to move, and/or absconded to India. As Capgemini has money demands against these individuals, attachment is appropriate pursuant to O.C.G.A. §18-3-1 et seq.

6.    Further, immediate relief is needed because there is a contract for sale on the Pimlicon Place Property, with a closing scheduled for June 15, 2013 (see Exhibit 5 annexed hereto).

**B.    CAPGEMINI'S CLAIMS FOR MONEY DAMAGES AGAINST DEFENDANTS.**

7.    By way of background, Capgemini provides technology, consulting and outsourcing services throughout North America, including creating and/or implementing computer code/applications and software. One of Capgemini's clients is a provider of vehicle remarketing services located in Atlanta, Georgia (the "Client").

8.    Suresh and Ashok were employees of Capgemini. In their respective Employment Agreement, both Suresh and Ashok agreed to avoid conflicts of interest and to refrain from competing with Capgemini. In particular, they agreed that they would not:

> (i) engage in any business activity similar in nature to any business conducted or planned by any member of [Capgemini] at any time during the period of my employment with my Employer; or (ii) compete in any way with products or services being developed, marketed, distributed, sold or otherwise provided by any member of [Capgemini] at such time.

(Complaint Ex. B Employment Agreement ¶ 4(a)).

9.    In addition, as employees of Capgemini, Suresh and Ashok agreed to be bound by Capgemini's Employee Handbook and Code of Conduct (see Complaint at Ex. A

thereto, providing that "the terms and conditions of employment applicable to employees of Capgemini at your level will apply to you"). Capgemini's Employee Handbook provides, in pertinent part, as follows:

> No individual shall, except on behalf of the Company with all fees payable to the Company, provide consulting services for a fee or otherwise act in competition with the Company. Employees owe a duty of loyalty to the Company. It is expressly understood that any attempt to develop business while employed by the Company on Company time or for which Company resources are used is solely for the benefit of the Company, and if an employee leaves the Company prior to the Company obtaining the business, any business relation with the client or prospective client subsequently developed within a two-year period following the employee leaving the Company shall be deemed for the benefit of the Company. In the event the Company determines that a former employee used Company time or resources to develop business other than for the benefit of the Company, then in addition to any remedies it may have in law or equity, the Company may seek from the former employee an accounting to pay over to the Company all fees directly or indirectly received from such client or prospective client . . . when the activity involves the assistance of other Company personnel, or requires substantial time during regular office hours, the resulting income will be Company income. This policy applies to all employees of the company.

(See Employment Handbook excerpt at Ex. 6 hereto (emphasis added)).

10. Similarly, Capgemini's Code of Conduct provides that Capgemini employees must avoid conflicts of interest and remain loyal to the company. Capgemini employees understand that they "must not engage in outside activities that compete with [Capgemini]" "must report any potential conflict of interest to my team leader" and "must not use or disclose any business information or opportunities obtained through my work for personal advantage or personal gain". (See Code of Conduct excerpt at Ex. 7 hereto).

11. Suresh and Ashok were assigned to help lead Capgemini's technology consulting engagement with the Client. Suresh was a Senior Manager and the account leader on the Client engagement, and Ashok was a Senior Manager on the account. Together, Suresh and

4

Ashok led a Capgemini team of over eighty consultants in the United States and India providing technology and consulting services for Client.   Such services included assisting Client in developing security software solutions, tools and processes to facilitate live, online vehicle auctions.   One software solution allows automobile dealers to participate in live auctions real-time, through a web-based interface.

12.   As Capgemini's leaders on the Client account for many years, Suresh and Ashok worked with numerous Client employees.

13.   In or about 2012, certain of the Client's present and/or former employees formed BidReady and engaged in discussions with Suresh and/or Ashok regarding the prospect of Suresh and/or Ashok assisting BidReady in building software that would allow BidReady to host or provide its own live automobile dealer auctions real-time, through a web-based interface, similar to the services Capgemini was providing for Client.

14.   Despite the fact that Suresh and Ashok were employees of Capgemini who had agreed in their respective Employment Agreement, and pursuant to their Employee Handbook and Code of Conduct, that they would not engage in business similar to that conducted by Capgemini on their own behalf, and would not compete with Capgemini, Suresh and Ashok, at all times without Capgemini's knowledge or consent, began performing work for BidReady for their own benefit and not for the benefit of Capgemini.

15.   In particular, Suresh and Ashok began to assist BidReady in building software and/or "prototypes" called the Auction Inventory Management System ("AIMS") and/or "Simulcast Light" for BidReady.   (See, e.g., Exhibit 11 hereto).

16.   Not only did Suresh and Ashok fail to present the BidReady opportunity to Capgemini but rather provided technology consulting services for BidReady themselves while

they were employees of Capgemini, they also caused other Capgemini employees and/or contractors to do so, for the benefit of Suresh, Ashok and/or Suresh's and/or Madhuri's company K-Macs -- despite the fact that such employees and/or contractors were being paid by Capgemini to perform technology consulting services on behalf of Capgemini.  Such services included not less than 4,382.80 hours expended on the development of AIMS at a value of not less than $306,796, and not less than 296 hours expended on the development of Simulcast Light at a value of not less than $20,270.

17.     Further, Suresh and/or Ashok caused Capgemini to retain Madhuri, Suresh's wife, as a contractor on the Client account and to be paid therefore.  However, although Capgemini paid Madhuri approximately $150,000, Madhuri provided no services whatsoever on behalf of Capgemini or for Client.  It appears that, Madhuri performed services for BidReady, for the benefit of herself and the other Defendants.

18.     As a result of the wrongful conduct of Defendants, BidReady is now running its own online automobile dealer auction sites for customers, including Mercedes-Benz (see, e.g., Complaint at Ex. C thereto).  However, despite the work and effort of Capgemini's employees and/or contractors, including Suresh and Ashok, and the fact that Capgemini paid these individuals as employees or contractors of Capgemini more than $450,000, Capgemini has not been compensated for the services provided by such individuals to BidReady.

19.     In December 2012, the Client brought to Capgemini's attention that Suresh, Ashok and others at Capgemini were providing the above-described services to BidReady, a competitor of the Client.  The Client claimed that these individuals used confidential information of the Client and/or performed such services when they should have

{N0345358; 1}

been working for the Client. Consequently, the actions of Defendants have harmed Capgemini's relationship with the Client, resulting in additional monetary damages to Capgemini.

20. In or about late 2012 or early 2013, shortly after Capgemini learned of the facts set forth above and Capgemini and Client confronted Suresh and Ashok, Capgemini terminated the employment of Suresh, Ashok resigned, and Madhuri ceased billing Capgemini for alleged contractor services.

21. As more fully set forth in the Complaint, as a result of the actions and misconduct of Defendants, Capgemini has suffered damages in an amount to be determined at trial, including but not limited to (i) lost revenues from BidReady as a result of Suresh's and Ashok's theft of the BidReady business for themselves and/or K-Macs, (ii) amounts paid by Capgemini to Suresh and Ashok while Suresh and Ashok were performing services for BidReady, (iii) amounts paid by Capgemini to other Capgemini employees or contractors (including Madhuri) while such persons were performing services for BidReady in an amount of at least $450,000, and (iv) damages suffered by Capgemini and which Capgemini is continuing to suffer as a result of the harm inflicted by Suresh and Ashok to Capgemini's business relationship with the Client. In total, such damages are believed to be in excess of $3,500,000.

## C.  SURESH, MADHURI AND ASHOK HAVE LEFT GEORGIA FOR INDIA AND THEREFORE ATTACHMENT IS PROPER.

22. Pursuant to O.C.G.A. § 18-3-1, pre-judgment attachment is appropriate here because the "debtors", Suresh, Madhuri and Ashok, all reside out of state, have moved, or are about to move, their respective domiciles out of the limits of this county to India, and/or have absconded.

23. In particular, Suresh, Madhuri and Ashok have each moved, are about to move or absconded to India, as evidenced by the following. First of all, several of the

consultants on the client team have informed me that Suresh and Ashok have relocated to India and it is common knowledge among team members.

24.     Moreover, in January 2013, shortly after Capgemini and Client confronted Suresh about his misconduct described above, Suresh sent an email to Capgemini's in-house counsel that he was leaving for India (see Exhibit 8 hereto).  The team confirms that, as of the date hereof, five months later, Suresh is still in India.

25.     Suresh's intent to remain in India is evidenced by the fact that he has a contract for sale of his primary residence, the Pimlicon Place Property, with the closing scheduled for on or before June 15, 2013 (see Exhibit 5 hereto).

26.     In addition, I understand that Capgemini's process server attempted to serve the Complaint upon Suresh and Madhuri at the Pimlicon Place Property.  They were not present and newspapers were piled up.  The process server was told by a neighbor that Suresh and Madhuri moved to India.  (See Exhibit 10 hereto).

27.     Similarly, in January 2013, shortly after Ashok was confronted by Capgemini and Client about Ashok's misconduct, Ashok notified Capgemini that he had left for India.  A recent email from Ashok sent on May 21, 2013 five months later, demonstrates that he is still in India (see Exhibit 9 hereto).

28.     As, pursuant to O.C.G.A.  § 18-3-2, Capgemini has money demands against Suresh, Madhuri and Ashok, attachment is proper.  Indeed, Suresh, Madhuri and Ashok are indebted to Capgemini in an amount to be determined at trial but believed to be in excess of $3,500,000.

**D.     CONCLUSION.**

29.     Accordingly, we respectfully request that the Court issue an Order of Attachment attaching (i) the property of Suresh and Madhuri at 770 Pimlicon Place, Suwanee,

{N0345358; 1}

GA 30024, i.e., the Pimlicon Place Property, (ii) the property of Suresh at 655 Earlham Drive, Suwanee, GA  30338, and (iii) the property of Ashok at 615 Earlham Drive, Suwanee, GA 30338.

_____
Rick Hymer

Sworn to before me this
31st day of May, 2013

_____
Notary Public

MARITZA TORRES
NOTARY PUBLIC, State of New York
No. 01TO5085523
Qualified in Queens County
Commission Expires Nov. 4, 20 13

9

{N0345358; 1}

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAPGEMINI U.S. LLC,                      )
                                         )          Civil Action No.
                    Plaintiff,           )
                                         )
        -against-                        )
                                         )
SURESH KANCHUSTAMBHAM, ASHOK             )
LAKSHMAN, K-MACS LLC, and MADHURI        )
BONDADA,                                 )
                                         )
                    Defendants.          )

## COMPLAINT

Plaintiff Capgemini U.S. LLC ("Plaintiff" or "Capgemini"), as and for

its Complaint against defendants Suresh Kanchustambham ("Suresh"), Ashok

Lakshman ("Ashok"), K-Macs LLC ("K-Macs") and Madhuri Bondada

("Madhuri", and, together with Suresh, Ashok and K-Macs, "Defendants"), alleges

as follows:

### Nature of the Action

1.    In this action, Capgemini seeks damages against its former

employees and their agents for wrongfully competing with Capgemini to obtain

business from BidReady LLC ("BidReady"), wrongfully diverting corporate

opportunities and monies away from Capgemini, and wrongfully utilizing Capgemini's employees and/or contractors to do so, all for Defendants' benefit and not for the benefit of Capgemini.    Capgemini asserts claims for breach of Defendants' respective employment agreement with Capgemini, breach of fiduciary duty, unjust enrichment, fraud and for equitable relief, as more fully set forth below.

### The Parties, Jurisdiction and Venue

2.    Plaintiff Capgemini is a limited liability company organized and existing under the laws of Delaware, with its principal place of business located at 623 Fifth Avenue, New York, New York 10022.  Capgemini's members are Capgemini America, Inc., a corporation organized and existing under the laws of New Jersey, with its principal place of business in New Jersey, Capgemini Holding Inc., a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, and Capgemini Financial Services USA Inc., a corporation organized and existing under the laws of Delaware, with its principal place of business in Illinois.

3.    Upon information and belief, Defendant Suresh is a citizen of the State of Georgia, with his address at 770 Pimlicon Place, Suwanee, GA 30024.

4.      Upon information and belief, Defendant Ashok is a citizen of the State of Georgia, with his address at 1624 Potomac Road, Atlanta, GA 30338.

5.      Upon information and belief, Defendant K-Macs is a limited liability company organized and existing under the laws of the State of Georgia, with its principal place of business at 770 Pimlicon Place, Suwanee, GA 30024. Upon information and belief, Suresh is a member and/or the owner of K-Macs.

6.      Upon information and belief, Defendant Madhuri is Suresh's wife and is a citizen of the State of Georgia, with her address at 770 Pimlicon Place, Suwanee, GA 30024. Upon information and belief, Madhuri is a member and/or the owner of K-Macs.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

8.      The amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

9.      This Court has personal jurisdiction and venue over the parties because, inter alia, Defendants are citizens of Georgia and Defendants' acts and/or omissions giving rise to the claims asserted herein occurred in the Atlanta, Georgia metropolitan area.

## Facts Common To All Claims

**A.**      **Background.**

10.      Capgemini provides technology, consulting and outsourcing services throughout North America, including creating and/or implementing computer code/applications and software.  One of Capgemini's clients is a provider of vehicle remarketing services located in Atlanta, Georgia (the "Client").

11.      In or before early 2007, Suresh and Ashok were employees of Kanbay Incorporated, a subsidiary of Kanbay International, Inc. (collectively, "Kanbay").

12.      On or about February 2, 2007, Capgemini's indirect parent corporation Capgemini North America, Inc. purchased Kanbay International, Inc. Certain Kanbay employees were transferred to Capgemini on or about August 1, 2007.

**B.**      **The Employment Agreements.**

13.      Upon Capgemini's acquisition of Kanbay, Suresh and Ashok joined Capgemini, their respective employment agreement with Kanbay was assigned to Capgemini, and Capgemini became the successor-in-interest to Kanbay with respect thereto.

14.     In particular, Suresh and Ashok each signed an assignment letter (the "Assignment Letter") confirming their new employment with Capgemini, and that their respective Employment Non-Disclosure, Non-Compete and Non-Solicitation Agreement with Kanbay and/or its predecessors (the "Employment Agreement") would be assigned to Capgemini, effective as of August 1, 2007.   The Assignment Letter further provides that the terms and conditions applicable to employees of Capgemini would apply to Suresh and Ashok as well (true and correct copies of the Assignment Letter and the Employment Agreement are annexed hereto as Exhibits A and B, respectively).

15.     In the Employment Agreement, both Suresh and Ashok agreed to avoid conflicts of interest and to refrain from competing with Capgemini.  In particular, they agreed that they would not:

> (i) engage in any business activity similar in nature to any business conducted or planned by any member of the Kanbay Group at any time during the period of my employment with my Employer; or (ii) compete in any way with products or services being developed, marketed, distributed, sold or otherwise provided by any member of the Kanbay Group at such time.

Employment Agreement ¶ 4(a)).

C.    **Defendants Wrongfully Provide Services to BidReady.**

16.    Since at least 2007 through late 2012 or early 2013, Suresh and Ashok were assigned to help lead Capgemini's technology consulting engagement with the Client.    At all relevant times, Suresh was a Senior Manager and the account leader on the Client engagement, and Ashok was a Senior Manager on the account.    Together, Suresh and Ashok led a Capgemini team of over eighty consultants in the United States and India providing technology and consulting services for the Client.    Such services included assisting the Client in developing security software solutions, tools and processes to facilitate live, online vehicle auctions.    One software solution allows automobile dealers to participate in live auctions real-time, through a web-based interface.

17.    As Capgemini's leaders on the Client account for many years, Suresh and Ashok worked with numerous Client employees, including Donald Foy ("Foy"), Client's former Executive Director, Rebecca Hester ("Hester"), former Senior Director of Marketing, and Thomas Pitchford ("Pitchford"), also a former executive at the Client.

18.    Upon information and belief, in 2012, Foy, Hester and/or Pitchford formed BidReady, a Georgia limited liability company.

19.   Upon information and belief, in our about March 2012, Foy, Hester and/or Pitchford, on the one hand, and Suresh and/or Ashok on the other, engaged in discussions regarding the prospect of Suresh and Ashok assisting BidReady in building software that would allow BidReady to host or provide its own live automobile dealer auctions real-time, through a web-based interface, similar to the services Capgemini was providing for the Client.  Upon information and belief, Foy, Hester and/or Pitchford were still employed at the Client at the time.

20.   Despite the fact that Suresh and Ashok were employees of Capgemini who had agreed in their respective Employment Agreement that they would not engage in business similar to that conducted by Capgemini on their own behalf, and would not compete with Capgemini, Suresh and Ashok, at all times without Capgemini's knowledge or consent, began performing work for BidReady for the benefit of Suresh, Ashok and/or Suresh's company K-Macs, and not for the benefit of Capgemini.  In particular, Suresh and Ashok began to assist BidReady in building software and/or "prototypes" called the Auction Inventory Management System ("AIMS") and/or "Simulcast Light" for BidReady.

21.   Not only did Suresh and Ashok fail to present the BidReady opportunity to Capgemini but rather provided technology consulting services for

BidReady themselves while they were employees of Capgemini; they also caused other Capgemini employees and/or contractors to do so, for the benefit of Suresh, Ashok, Madhuri and/or Suresh's and/or Madhuri's company K-Macs – despite the fact that such employees and/or contractors were being paid by Capgemini to perform technology consulting services on behalf of Capgemini.  Such services included not less than 4,382.80 hours expended on the development of AIMS at a value of not less than $306,796, and not less than 296 hours expended on the development of Simulcast Light at a value of not less than $20,270.

22.     Further, Suresh and/or Ashok caused Capgemini to retain Madhuri, Suresh's wife, as a contractor on the Client account and to be paid therefore.  However, although Capgemini paid Madhuri approximately $150,000, Madhuri provided no services whatsoever on behalf of Capgemini or for the Client.  Upon information and belief, Madhuri performed services for BidReady for the benefit of herself and the other Defendants.

23.     As a result of the wrongful conduct of Defendants, BidReady software is now being used on online automobile dealer auction sites for BidReady's customers, including Mercedes-Benz (see, e.g., Exhibit C annexed hereto).  However, despite the work and effort of Capgemini's employees and/or contractors, including Suresh and Ashok, and the fact that Capgemini paid these

individuals as employees or contractors of Capgemini an amount of over $450,000, Capgemini has not been compensated for the services provided by such individuals to BidReady.

24.    In early December 2012, the Client brought to Capgemini's attention that Suresh, Ashok and others at Capgemini were providing the above-described services to BidReady, a competitor of the Client.    The Client claimed that these individuals used confidential information of the Client and/or or performed such services when they should have been working for the Client. Consequently, the actions of Defendants have harmed Capgemini's relationship with the Client, resulting in additional monetary damages to Capgemini.

25.    In or about late 2012 or early 2013, shortly after Capgemini first learned of the facts set forth above, Capgemini terminated the employment of Suresh, Ashok resigned, and Madhuri ceased billing Capgemini for alleged contractor services.

## FIRST CAUSE OF ACTION

(Breach of Contract, against Suresh and Ashok)

26.    Capgemini repeats and realleges each and every allegation set forth in paragraphs 1 through 25  above as if fully set forth herein.

27.     As set forth above, Suresh and Ashok have breached their respective Employment Agreement with Capgemini by, _inter_ _alia_, without knowledge or consent of Capgemini, engaging in a business similar to that conducted by Capgemini on their own behalf and competing with Capgemini. Towards this end, Suresh and Ashok caused employees and/or contractors of Capgemini to perform work for BidReady while they were being paid by Capgemini.  As a result, Suresh and Ashok harmed Capgemini's relationship with the Client.

28.     Capgemini has fully performed its obligations under the respective Employment Agreement.

29.     As a result of Suresh's and Ashok's breaches, Capgemini has suffered damages in an amount to be determined at trial, including but not limited to (i) lost revenues from BidReady as a result of Suresh's and Ashok's theft of the BidReady business for themselves and/or K-Mac, (ii) amounts paid by Capgemini to Suresh and Ashok while Suresh and Ashok were performing services for BidReady, (iii) amounts paid by Capgemini to other Capgemini employees or contractors (including Madhuri) while such persons were performing services for BidReady in an amount of at least $450,000, and (iv) damages suffered by Capgemini and which Capgemini is continuing to suffer as a result of the harm

inflicted by Suresh and Ashok to Capgemini's business relationship with the Client.   Such damages are believed to be in excess of $3,500,000.

30.    In addition, the Employment Agreement provides:    "The prevailing party in any litigation arising under this Agreement shall be entitled to recover his or its reasonable attorneys' fees and expenses in addition to all other available remedies" (Employment Agreement ¶ 8).   Accordingly, Capgemini is entitled to recover its attorneys' fees related to Suresh's and Ashok's breach of the Employment Agreement, as well as costs, disbursements and interest.

## SECOND CAUSE OF ACTION

(Breach of Fiduciary Duty, against Suresh and Ashok)

31.    Capgemini repeats and realleges each and every allegation set forth in paragraph 1 through 30 above as it fully set forth herein.

32.    As employees of Capgemini in a leadership role, Suresh and Ashok each owed Capgemini fiduciary duties, including a duty of loyalty.

33.    As more fully set forth above, Suresh and Ashok have breached their fiduciary duties to Capgemini, including their duty of loyalty, by,  inter alia, without knowledge or consent of Capgemini, engaging in business similar to that conducted by Capgemini on their own behalf and not on behalf of Capgemini, competing with Capgemini, causing employees or contractors of Capgemini to

perform work for BidReady while they were being paid by Capgemini,  and causing Capgemini to retain and pay Suresh's wife Madhuri when she was providing no services for Capgemini and, upon information and belief, was providing services for BidReady, all for their own benefit and not for the benefit of Capgemini.

34.    As a result of the foregoing, Capgemini has been damaged in an amount to be determined at trial, including but not limited to (i) lost revenues from BidReady as a result of Suresh's and Ashok's theft of the BidReady business for themselves and/or K-Mac, (ii) amounts paid by Capgemini to Suresh and Ashok while Suresh and Ashok were performing services for BidReady, (iii) amounts paid by Capgemini to other Capgemini employees or contractors (including Madhuri) while such persons were performing services for BidReady in an amount of at least $450,000, and (iv) damages suffered by Capgemini and which Capgemini is continuing to suffer as a result of the harm inflicted by Suresh and Ashok to Capgemini's business relationship with the Client.   Such damages are believed to be in excess of $3,500,000.

## THIRD CAUSE OF ACTION

(Unjust Enrichment, against Suresh and Ashok, in the alternative)

35.    Capgemini repeats and realleges each and every allegation set forth in paragraphs 1 through 34 above as if fully set forth herein.

36.    Suresh's and Ashok's receipt and retention of the monies, resources and other benefits provided by Capgemini as more fully set forth above have conferred an unearned and undeserved benefit upon Suresh and Ashok, without compensation to Capgemini, allowing Suresh and Ashok to enrich themselves unjustly and at the expense of Capgemini.  It is against equity and good conscience to permit Suresh and Ashok to retain this benefit.

37.    As a result of the foregoing, Capgemini has been damaged in an amount to be determined at trial, believed to be in excess of $500,000.

## FOURTH CAUSE OF ACTION

(Unjust Enrichment, against K-Macs and Madhuri)

38.    Capgemini repeats and realleges each and every allegation set forth in paragraphs 1 through 37 above as it fully set forth herein.

39.    K-MACS and/or Madhuri's receipt and retention of payment for services they did not perform and/or were performed by Capgemini, its employees or contractors, which services were performed in wrongful competition

13

with Capgemini, have conferred an unearned and undeserved benefit upon K-Macs and/or Madhuri, without compensation to Capgemini, allowing K-Macs and Madhuri to enrich themselves unjustly and at the expense of Capgemini.  It is against equity and good conscience to permit K-Macs and/or Madhuri to retain this benefit.

40.    As a result of the foregoing, Capgemini has been damaged in an amount to be determined at trial, believed to be in excess of $500,000.

### FIFTH CAUSE OF ACTION

(Fraud, against Suresh, Ashok and Madhuri)

41.    Capgemini repeats and realleges each of every allegation set forth in paragraphs 1 through 40 above as if fully set forth herein.

42.    Suresh, Ashok and/or Madhuri falsely represented to Capgemini that Madhuri would be and did in fact perform services for Capgemini when they each knew that Madhuri would not and did not provide any such services on behalf of Capgemini, and that she either provided no services at all or provided services for BidReady.  Suresh, Ashok and Madhuri wrongfully concealed from Capgemini that Madhuri was not performing services for Capgemini.  Further, Suresh, Ashok and Madhuri wrongfully submitted and/or approved invoices to Capgemini for work allegedly performed by Madhuri on a

weekly basis from November 15, 2011 through November 15, 2012 which were false as no such services were provided, and Capgemini paid such invoices.   In addition, Suresh and Ashok caused employees and contractors of Capgemini to perform work for BidReady by falsely representing that such work was for the Client.

43.     The facts misrepresented and/or omitted by Defendants were and are material.

44.     Suresh, Ashok and Madhuri acted with scienter.

45.     Suresh, Ashok and Madhuri acted with the intent to induce Capgemini to pay monies it was not obligated to pay.

46.     Capgemini justifiably relied upon the misrepresentations and/or omissions of Suresh and Ashok, who led the The Client account for many years, and upon Madhuri, in paying such monies.

47.     As consequence of the foregoing, Capgemini has suffered damages in an amount to be determined at trial, but believed to be in excess of $3,500,000.

48.     Further, the intentional and knowing actions of Suresh, Ashok and Madhuri described above demonstrate conscious indifference to consequences. Accordingly, Capgemini is entitled to recover punitive damages.

WHEREFORE, Capgemini demands judgment as follows:

(a)     On the First Cause of Action, awarding Capgemini damages in an amount to be determined at trial, but believed to be in excess of $3,500,000;

(b)     On the Second Cause of Action, awarding Capgemini damages in an amount to be determined at trial, but believed to be in excess of $3,500,000;

(c)     On the Third Cause of Action, awarding Capgemini damages in an amount to be determined at trial, but believed to be in excess of $500,000;

(d)     On the Fourth Cause of Action, awarding Capgemini damages in an amount to be determined at trial, but believed to be in excess of $500,000;

(e)     On the Fifth Cause of Action, awarding Capgemini damages in an amount to be determined at trial, but believed to be in excess of $3,500,000;

(f)     Interest on the foregoing amounts from when they should have been paid, together with attorneys' fees, punitive damages, costs and disbursements, as allowable by law;

(g)     Injunctive and/or other equitable relief, including a pre-judgment attachment of Defendants' real property located in Georgia; and

(h)    For such other and further relief as the Court deems just and proper.

Dated:  May 22, 2013

Respectfully submitted,

ARNALL GOLDEN GREGORY LLP


By: /s/ Anuj Desai_____
    Andrew B. Flake
    Georgia Bar No. 262425
    Anuj Desai
    Georgia Bar No. 193889
    171 17th Street Northwest, Suite 2100
    Atlanta, GA 30363
    Tel: 404-873-8658
    anuj.desai@agg.com
    Attorneys for Plaintiff

OF COUNSEL:
Gerry Silver, Esq.
SULLIVAN & WORCESTER LLP
(Pro Hac Vice Application Pending)
1633 Broadway
New York, New York 10019
Phone:(212) 660-3096
Fax: (212) 600-3001
gerry.silver@sandw.com
Attorneys for Plaintiff

# EXHIBIT A

 **Capgemini**
CONSULTING.TECHNOLOGY.OUTSOURCING

July 10, 2007

Suresh Kanchusthambham
770 Pimlicon Pl.
Suwanee, GA 30024

Re:   Transfer of Employment to Capgemini U.S. LLC

Dear Suresh:

This letter confirms that your employment and associated Employee Non-Disclosure, Non-Compete and Non-Solicitation Agreement with Kanbay Incorporated ("Kanbay") will be assigned to Capgemini U.S. LLC ("Capgemini") effective as of August 1, 2007. Your service dates at Capgemini will be adjusted to recognize your full length of credited service time at Kanbay.

Upon your transfer to Capgemini, the terms and conditions of employment applicable to employees of Capgemini at your level will apply to you. These terms and conditions currently include eligibility to participate in the Capgemini health and welfare benefit plans and Capgemini's 401(k) Profit Sharing Program (although you will not become eligible to participate in the profit sharing component of that program until January 1, 2008).

To the extent that you participate in any Kanbay annual bonus program or sales commission plan, you will remain a participant in such program for the remainder of 2007, and you will not participate in any similar Capgemini's program(s) during that time. However, beginning January 1, 2008, you will participate exclusively in Capgemini's variable compensation and/or sales incentive programs, as applicable to your level and role.

If you held any Kanbay restricted stock or stock options that were converted into any right to receive a cash payment as described in the merger agreement by and among Kanbay International Inc., Cap Gemini SA and Capgemini Financial Services Inc., a copy of which is attached as Exhibit 2.1 to the Form 8-K that Kanbay filed with the Securities and Exchange Commission on October 26, 2006, this assignment of your employment will not impact those rights.

12/11/2012



CONSULTING.TECHNOLOGY.OUTSOURCING

This assignment of your employment does not entitle you to any severance pay, notice of termination, payment in lieu of notice, or any other separation pay or benefits from Kanbay or any of its parents, affiliates or subsidiaries, and your employment shall remain at-will (which means that either Capgemini or you may terminate your employment at any time, with or without any reason).

You should indicate your understanding of and agreement with these terms by signing and returning this letter by no later than July 20, 2007.

Please forward your signed letter to:

Capgemini U.S. LLC
Attn: HR Operations-Suite 1500
111 N. Canal Street
Chicago IL 60606

You may wish to keep a copy for your records, as well.

Should you have any questions, please do not hesitate to contact Jack Desmond at 732 669-6705.

Sincerely,

Lanny Cohen
Chief Executive Officer

*    *    *    *    *

I understand and agree with the contents of this letter, and I acknowledge the assignment of my employment and the Employee Non-Disclosure, Non-Compete and Non-Solicitation Agreement to Capgemini U.S. LLC.

Signed _____

Dated   07/17/07 _____



July 10, 2007

Ashok Lakshman
1624 Potomac Rd.
Atlanta, GA 30338

      Re:   <u>Transfer of Employment to Capgemini U.S. LLC</u>

Dear Ashok:

This letter confirms that your employment and associated Employee Non-Disclosure, Non-Compete and Non-Solicitation Agreement with Adjoined Consulting LLC ("Adjoined") will be assigned to Capgemini U.S. LLC ("Capgemini") effective as of August 1, 2007. Your service dates at Capgemini will be adjusted to recognize your full length of credited service time at Adjoined.

Upon your transfer to Capgemini, the terms and conditions of employment applicable to employees of Capgemini at your level will apply to you. These terms and conditions currently include eligibility to participate in the Capgemini health and welfare benefit plans and Capgemini's 401(k) Profit Sharing Program (although you will not become eligible to participate in the profit sharing component of that program until January 1, 2008).

To the extent that you participate in any Adjoined annual bonus program or sales commission plan, you will remain a participant in such program for the remainder of 2007, and you will not participate in any similar Capgemini's program(s) during that time. However, beginning January 1, 2008, you will participate exclusively in Capgemini's variable compensation and/or sales incentive programs, as applicable to your level and role.

Case 1:13-cv-01727-ODE Document 10-2 Filed 06/03/13 Page 33 of 84
Case 1:13-cv-01727-ODE Document 1-1 Filed 05/22/13 Page 5 of 5

12/12/2012


CONSULTING.TECHNOLOGY.OUTSOURCING

This assignment of your employment does not entitle you to any severance pay, notice of termination, payment in lieu of notice, or any other separation pay or benefits from Adjoined or any of its parents, affiliates or subsidiaries, and your employment shall remain at-will (which means that either Capgemini or you may terminate your employment at any time, with or without any reason).

You should indicate your understanding of and agreement with these terms by signing and returning this letter no later than July 20, 2007. Please forward your signed letter to:

Capgemini U.S. LLC
Attn: HR Operations-Suite 1500
111 N. Canal Street
Chicago IL 60606

You may wish to keep a copy for your records, as well.

Should you have any questions, please do not hesitate to contact Michele Martin at 732 669-6549.

Sincerely,

Lanny Cohen
Chief Executive Officer

I understand and agree with the contents of this letter, and I acknowledge the assignment of my employment and the Employee Non-Disclosure, Non-Compete and Non-Solicitation Agreement to Capgemini U.S. LLC.

Signed   K. L. Achoe

Dated   07/27/2007

# EXHIBIT B



### KANBAY INTERNATIONAL, INC.
### EMPLOYEE NON-DISCLOSURE, DEVELOPMENT
### AND NON-SOLICITATION AGREEMENT

In consideration of my employment with Kanbay Incorporated (my "Employer"), a subsidiary of Kanbay International, Inc. ("Kanbay"), and the compensation paid to me as an employee of my Employer, and as a condition precedent of my continued employment with my Employer, I hereby agree with Kanbay and my Employer as follows:

1.   Term of Agreement.  This Employee Non-Disclosure, Development and Non-Solicitation Agreement (the "Agreement") shall commence on the date hereof and shall continue for so long as I am employed by my Employer, Kanbay or any  of their direct or indirect subsidiaries or affiliates (collectively, the "Kanbay Group") and for an additional twelve (12) months following the date such employment terminates for any reason. The term "Employer", as used in this Agreement, will refer to any member of the Kanbay Group by which I am at any time employed.

2.   Confidentiality.

a.   Confidential Information. I shall keep secret and I will not at any time, whether during or after the termination of my employment, reveal to any person or entity any trade secret, or proprietary or confidential information of any member of the Kanbay Group or of any third party which any member of the Kanbay Group is under an obligation to keep confidential, including but not limited to proprietary or confidential information respecting inventions, products, designs, methods, know-how, techniques, systems, processes, strategies, software programs, works of authorship, Intellectual Property Rights (as defined below), customer lists, employee lists and any other personally identifiable information about any employee of the Kanbay Group, user lists, vendor lists, content provider lists, supplier lists, pricing information, projects, budgets, plans, projections, forecasts, financial information and proposals, and any other information which due to the nature or character of such information, any prudent person might reasonably under similar circumstances treat such as confidential or would expect the Kanbay Group to  regard as confidential, all regardless of  whether such information was disclosed before or after the date hereof (collectively, "Confidential Information"), except as may be required by law or in the ordinary course of performing my duties as an employee of my Employer. I will also take all reasonable precautions to prevent the inadvertent disclosure of the Confidential Information to any unauthorized person.  I shall not use or attempt to use any Confidential Information in any manner that may injure or cause loss or may be reasonably expected to injure or cause loss, whether directly or indirectly, to any member of the Kanbay Group.  The obligations of this clause shall survive termination of this Agreement.  For purposes of this Agreement, "Intellectual Property Rights" shall mean all industrial and intellectual property rights (including both economic and Moral Rights (as defined below)), including, without limitation, patents, patent applications, patent rights, trademarks, trademark applications, trade names, service marks, service mark applications, copyrights, copyright applications, databases, algorithms, computer programs and other software, know-how, trade secrets, proprietary processes and formulae, inventions, trade dress, logos, design and all documentation and media constituting, describing or relating to the above.

# Kanbay

b. **Exceptions.** The above restrictions shall not apply to information that: (a) is publicly available without any action on my part; (b) is approved for release by written authorization of the rightful owner of such information; or (c) is required to be disclosed by law or by an order of any court, provided, however, that I shall provide prompt written notice to my Employer of any court order or requirement to enable Kanbay to seek a protective order or otherwise prevent or restrict such disclosure. If, after Kanbay has had a reasonable opportunity to seek such order/relief, it fails to obtain such order/relief, and, in the opinion of the legal counsel for Kanbay, I am legally compelled to disclose any of the Confidential Information by law or by an order of any court, then I shall disclose that portion of the Confidential Information which the legal counsel to Kanbay advises that I am compelled to disclose.

c. **Confidential Material.** During my employment I shall not make, take, remove from the business premises of my Employer or any member of the Kanbay Group, use or permit to be used any notes, memoranda, reports, lists, records, drawings, sketches, specifications, software programs, data, documentation or other materials of any nature relating to any matter within the scope of or concerning the Confidential Information of any member of the Kanbay Group (collectively, "Confidential Material") other than for the benefit of any member of the Kanbay Group and in connection with performing the duties of my employment. Further, I shall not, after the termination of my employment, use or permit to be used any such Confidential Material, it being agreed that all Confidential Material shall be and remain the sole and exclusive property of the applicable member of the Kanbay Group and that immediately upon the termination of my employment I shall deliver all Confidential Material, and all copies thereof, to my Employer at its main office.

3. **Assignment of Inventions; Original Works of Authorship.**

a. **General.** If at any time or times during my employment, I shall (either alone or with others) make, conceive, create, discover, invent or reduce to practice any invention, modification, discovery, design, development, improvement, process, software program, work of authorship, documentation, formula, data, technique, know-how, trade secret or Intellectual Property Right whatsoever or any interest therein (whether or not patentable or registrable under copyright, industrial design, trademark or similar statutes (including but not limited to the Semiconductor Chip Protection Act) or subject to analogous protection) (collectively "Developments") that:

(i) relates to the business of any member of the Kanbay Group, including but not limited to its Customers or suppliers, or to any of the products or services being developed, manufactured, sold or provided by any member of the Kanbay Group or which may be used in relation therewith;

(ii) results from tasks assigned me by my Employer; or

(iii) results from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by any member of the Kanbay Group,

such Developments and the benefits thereof shall immediately become the sole and absolute property of the applicable member of the Kanbay Group and its assigns, as works made for hire or otherwise, and I shall disclose to my Employer (or any entity or

12/12/2012

**Kanbay**

person(s) designated by it), without cost or delay and without communicating to others the same, each such Development and all available information relating thereto (with all necessary plans and models). I hereby assign any and all rights I may have or acquire in the Developments and all benefits and/or rights resulting therefrom to Kanbay and its assigns without further compensation. I hereby irrevocably waive any and all Moral Rights of authorship I may have in the Developments. I hereby waive and quitclaim to Kanbay any and all claims of any nature whatsoever that I may now have or may hereafter have for infringement or misappropriation of any intellectual property right, including without limitation any claim that I own any rights in a Development, or that a Development infringes or misappropriates any of my intellectual property rights. All such assignment of rights shall be perpetual (or if any Intellectual Property Right is of a limited duration, for the entire duration of such Intellectual Property Right), irrevocable, worldwide and shall not lapse, even if Kanbay or my Employer fails at any time to commercially exploit any such Developments.

b.  Inalienable Rights. Any assignment of copyright hereunder (and any ownership of a copyright as a work made for hire) includes all rights of paternity, integrity, disclosure and withdrawal and any other rights that may be known as or referred to as "moral rights" (collectively "Moral Rights"). If, despite Section 3(a), I am deemed under applicable law to retain any rights in any Developments, including without limitation any Moral Rights, I hereby waive, and agree to waive, all such rights. To the extent that such waivers are deemed unenforceable under applicable law, I grant, and agree to grant, to Kanbay or its designees the exclusive, perpetual, irrevocable, worldwide and royalty-free license to use, modify and market the Development, without identifying me or seeking my consent.

c.  Employee Patent Rights. I am hereby notified that the preceding provisions do not apply to any invention for which no equipment, supplies, facility, or trade secret information of any member of the Kanbay Group was used and which was developed entirely on my own time, unless the invention: (i) results from any work performed by me for any member of the Kanbay Group, or (ii) relates to the business, or actual or demonstrably anticipated research or development of any member of the Kanbay Group. Provided that if in the course of my employment with my Employer, I incorporate into a Kanbay product, process or machine a prior invention owned by me or in which I have interest, Kanbay is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, sub-licensable, worldwide license to make, have made, modify, use, market, sell and distribute such prior invention as part of or in connection with such product, process or machine. I have attached hereto as Exhibit A, a complete list of all inventions or improvements to which I claim ownership and that I desire to remove from the operation of this Agreement, and I acknowledge and agree that such list is complete. If no such list is attached to this Agreement, I represent that I have no inventions or improvements.

d.  Further Documentation. Upon disclosure of each Development to my Employer, I will, during my employment and at any time thereafter, at the request and cost of any member of the Kanbay Group, promptly sign, execute, make and do all such deeds, documents, acts and things as such member and its duly authorized agents may reasonably require:

(i)  to apply for, register, obtain and vest solely in the name of any member of the Kanbay Group designated by my Employer (unless such member otherwise

12/12/2012



directs) letters patent, industrial designs, copyrights, trademarks or other analogous protection, in any country throughout the world and, when so obtained or vested, to renew and restore the same; or

(ii)     for revocation of such letters patent, copyrights, industrial designs, trademarks or other analogous protection; or

(iii)     to defend any judicial, opposition or other proceedings relating to applications for, or the revocation of, such letters patent, copyrights, industrial designs, trademarks, or other analogous protection.

If I am not employed by a member of the Kanbay Group at the time when any member of the Kanbay Group requests my assistance in connection with the foregoing, the member making such a request will pay me for my reasonable time expended in complying with the above terms at an hourly rate equal to the effective hourly rate at which I was paid by my Employer immediately prior to my termination as an employee.

c.     Power of Attorney.  In the event that any member of the Kanbay Group is unable, after reasonable effort, to secure my signature on any document concerning a Development, including applications relating to letters patent, copyright, industrial designs, or trademark registration or any analogous protection, whether because of my physical or mental incapacity or for any other reason whatsoever, I hereby irrevocably designate and appoint Kanbay and its duly authorized officers and agents as my agent and attorney-in-fact to act for and in my behalf and stead in order to execute and file any such documents, including applications, and to do all lawfully permitted acts to further the prosecution and issuance of letters patent, copyright, industrial designs or trademark registrations or any analogous protection thereon, with the same legal force and effect as if executed and filed by me.

4.     Conflict of Interest and Non-Solicitation of Customers.

a.     Conflict of Interest.  While I am employed by my Employer (or any member of the Kanbay Group), I will not, without the prior written consent of my Employer or Kanbay, directly or indirectly, whether alone or as a partner, joint venturer, officer, director, employee, consultant, agent, independent contractor or stockholder of any company, business or other commercial enterprise: (i) engage in any business activity similar in nature to any business conducted or planned by any member of the Kanbay Group at any time during the period of my employment with my Employer; or (ii) compete in any way with products or services being developed, marketed, distributed, sold or otherwise provided by any member of the Kanbay Group at such time.  I shall be permitted to own not more than five percent (5%) of the shares of stock of any public company having a class of equity securities actively traded on a recognized securities exchange or securities market, and such ownership shall not, in and of itself, violate the terms of this Section 4.

b.     Customers.  During the term of this Agreement, I will not, directly or indirectly, solicit or do business with any Customer (as defined below) other than on behalf of a member of the Kanbay Group, or entice, induce or assist any Customer to cease doing business with any member of the Kanbay Group or to become a customer of any other person or entity engaged in any competitive activity.  For purposes of this paragraph, a "Customer" means: (i) any near-permanent customer, or any other customer of any member of the Kanbay Group with whom I

12/12/2012

# Kanbay

had contact (including contact with said customer's Confidential Information) as an employee of my Employer during the twelve (12) consecutive calendar months preceding my termination of employment from my Employer; or (ii) any customer or prospective customer of any member of the Kanbay Group who during the twelve (12) consecutive calendar months preceding my termination of employment with my Employer has: (A) made or received a written proposal in which I participated or to which I had access on behalf of any member of the Kanbay Group; or (B) made or received at least two (2) sales visits in which I participated. In the case of an entity with multiple divisions, departments or business units, Kanbay (or any entity or person(s) designated by it), in its sole discretion, shall determine whether the entire entity or a specific division, department or business unit is a Customer based on the nature of the relationship between the entity and the members of the Kanbay Group.

5. **Non-Solicitation of Kanbay Employees.** During the term of this Agreement, I will not, directly or indirectly, solicit, recruit or hire any key employee or contractor of any member of the Kanbay Group to work for any third party, seek in any manner to induce any such key employee or contractor to leave his or her employment with any member of the Kanbay Group, or knowingly permit any business organization which is directly or indirectly controlled by me to solicit, recruit or hire any key employee or contractor of any member of the Kanbay Group. Further, I will not engage in any activity that would cause any such key employee or contractor to violate any agreement with any member of the Kanbay Group. "Key employee or contractor" shall mean: (i) any signatory to a restrictive and/or non-solicitation covenant with any member of the Kanbay Group; (ii) any professional employee (including computer professionals) or contractor; (iii) any senior administrator; and (iv) any other employee or contractor who has a written employment agreement with any member of the Kanbay Group.

6. **Prior Agreements.** I hereby represent that, except as I have disclosed in writing to my Employer and attached hereto as Exhibit A, I am not a party to, or bound by the terms of, any agreement with any previous employer or other party which would materially restrict or impair my ability to carry out the duties of my employment with my Employer by requiring me to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of my employment with my Employer or from competing, directly or indirectly, with the business of such previous employer or any other party. I further represent that my performance of all the terms of this Agreement and as an employee of my Employer does not and will not breach any agreement to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to my employment with my Employer and that I will not disclose to any member of the Kanbay Group (or to any of its employees or agents) or induce any such member (or any of its employees or agents) to use any confidential or proprietary information or material belonging to any previous employer or to others. I hereby authorize Kanbay (or any entity or person(s) designated by it) to notify my new employer about my rights and obligations under this Agreement following the termination of my employment with my Employer.

7. **Company Authorization for Publication.** Prior to my submitting or disclosing for possible publication or dissemination outside the Kanbay Group any material/invention prepared by me that incorporates information that concerns Kanbay's business or anticipated research, I agree to deliver a copy of such material to Kanbay, for its review. Within twenty (20) days following such submission, Kanbay agrees to notify me in writing whether Kanbay believes such material contains any information/inventions/Developments etc. owned by

**Kanbay**

Kanbay or any member of the Kanbay Group, and I agree to make such deletions and revisions as are reasonably requested by Kanbay to protect its property. I further agree to obtain the written consent of Kanbay prior to any review of such material by persons outside the Kanbay Group.

8. **Remedies.** I agree that the breach of this Agreement by me will cause irreparable damage to the Kanbay Group and that in the event of such breach Kanbay (or any entity or person(s) designated by it) shall have, in addition to any and all remedies of law, the right to an injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder. Nothing contained in this Agreement shall be construed as prohibiting Kanbay or its designees from pursuing any other remedy available for such breach or threatened breach. The prevailing party in any litigation arising under this Agreement shall be entitled to recover his or its reasonable attorneys' fees and expenses in addition to all other available remedies.

9. **Employment Status.** I understand that this Agreement does not create an obligation on any member of the Kanbay Group or any other person or entity to continue my employment.

10. **Modifications.** Any amendment to or modification of this Agreement, and any waiver of any provision hereof, shall be in writing. Any waiver by Kanbay of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

11. **Severability.** Each provision herein shall be treated as a separate and independent clause. Further, the unenforceability of any one provision shall in no way impair the enforceability of any other provision of this Agreement, and any provision of this Agreement which is unenforceable in any jurisdiction shall not render unenforceable such provision in any other jurisdiction. Moreover, if one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, scope, subject or activity so as to be unenforceable at law, such provision(s) shall be construed by the appropriate judicial body by limiting and reducing it (them), so as to be enforceable to the maximum extent compatible with the applicable law as it shall then appear.

12. **Survival of Rights and Obligations.** The provisions of Sections 2, 3, 5, 6, 7, 11, 12, 12 and 13 shall survive any termination of this Agreement.

13. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, and no action involving this Agreement may be brought except in the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois, Eastern Division. My Employer and I hereby consent to the personal jurisdiction of such courts with respect to all actions relating to this Agreement. Notwithstanding the foregoing, Kanbay (or any entity or person(s) designated by it) may bring an action for injunctive relief in any court of competent jurisdiction.

14. **Intended Beneficiaries.** I acknowledge and agree that all members of the Kanbay Group are intended third-party beneficiaries of the provisions of the Agreement, and that any member of the Kanbay Group may enforce the terms and conditions hereof directly.

12/12/2012



15.    Right of Assignment.   I acknowledge and agree that I shall not assign this Agreement, or any right or obligation hereunder, to any third party. My Employer shall have the right to assign this Agreement.  I agree that this Agreement shall be automatically deemed assigned without any requirement of notice or consent of any kind in the event that my employment is transferred to any member of the Kanbay Group.

In witness whereof, I have executed this Employee Non-Disclosure, Development and Non-Solicitation Agreement as of date set forth below.

12/12/2012



SIGNATURE   _K. L. Ashok_

Date:   06/ 14/ 2006
Name and Address - Please print below:
ASHOK LAKSHMAN
# 1624 , POTOMAC ROAD
ATLANTA GA - 30338

KANBAY INCORPORATED

By: _____
Name: William F. Weissman
Title: Vice President & Chief Financial Officer

Mar-14-02   08:00pm   From-                                      T-766   P.013/015   F-088



# Acknowledgment of Receipt or Access to the Kanbay Associates Handbook

## Receipt of Kanbay Associates Handbook

I have received or been giving access to the Kanbay Associates Handbook. I understand that the policies and benefits described in it are subject to change at the discretion of Kanbay leadership. I also understand that it is my responsibility to regularly read any published changes. I understand that it is a summary document and is not intended to be all-inclusive of Kanbay's policies, practices, procedures and benefits. The current version of this handbook will be maintained on Kanbay's knet/Intranet.

## At-Will Employment

I further understand that my employment is at will, and neither Kanbay nor myself has entered into a contract regarding the duration of my employment. I am free to terminate my employment with Kanbay at any time, with or without reason. It is contrary to company policy to guarantee employment for any specified duration for any employee. All employment is viewed as terminable-at-will at the discretion of either Kanbay or any associate. Any exception to this policy may only occur with written authorization from the CEO or the Board of Directors.

## Confidential Information

I am aware that during the course of my employment confidential information may be made available to me, (i.e. system designs, marketing strategies, customer lists, pricing policies, client confidential information). I understand that this information is proprietary and critical to the success of Kanbay and must not be distributed or used outside of the course of conducting Kanbay business. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

## Return of Company Property

Any Kanbay property issued to you, such as, but not limited to: cell phone, computer equipment (desktop, laptop or palmtop unit), keys, building/office access devices, pager, or company credit card, must be returned to Kanbay at the time of your termination. The Kanbay company property is to be used for company use only (i.e. using your cell phone for personal calls and charging them to Kanbay). You will be responsible for any lost or damaged items. The value of any property issued and not returned may be deducted from your paycheck, and you may be required to sign a wage deduction authorization form for this purpose.

SURESH KUMAR KANCHUSTHAMBHAM          LEAD CONSULTANT
_____       _____
Associate's Printed Name              Position

_____       03-13-2002
Associate's Signature                 Date

© Kanbay Incorporated, Confidential January 2001                Page 1
Revised 03/12/02

12/12/2012

# Acknowledgment of Receipt or Access to the Kanbay Associates Handbook

## Receipt of Kanbay Associates Handbook

I have received or been giving access to the Kanbay Associates Handbook. I understand that the policies and benefits described in it are subject to change at the discretion of Kanbay leadership. I also understand that it is my responsibility to regularly read any published changes. I understand that it is a summary document and is not intended to be all-inclusive of Kanbay's policies, practices, procedures and benefits. The current version of this handbook will be maintained on Kanbay's knet/Intranet.

## At-Will Employment

I further understand that my employment is at will, and neither Kanbay nor myself has entered into a contract regarding the duration of my employment. I am free to terminate my employment with Kanbay at any time, with or without reason. It is contrary to company policy to guarantee employment for any specified duration for any employee. All employment is viewed as terminable-at-will at the discretion of either Kanbay or any associate. Any exception to this policy may only occur with written authorization from the CEO or the Board of Directors.

## Confidential Information

I am aware that during the course of my employment confidential information may be made available to me, (i.e. system designs, marketing strategies, customer lists, pricing policies, client confidential information). I understand that this information is proprietary and critical to the success of Kanbay and must not be distributed or used outside of the course of conducting Kanbay business. In the event of termination of employment, whether voluntary or involuntary, I hereby agree not to utilize or exploit this information with any other individual or company.

## Return of Company Property

Any Kanbay property issued to you, such as, but not limited to: cell phone, computer equipment (desktop, laptop or palmtop unit), keys, building/office access devices, pager, or company credit card, must be returned to Kanbay at the time of your termination.   The Kanbay company property is to be used for company use only (i.e. using your cell phone for personal calls and charging them to Kanbay). You will be responsible for any lost or damaged items. The value of any property issued and not returned may be deducted from your paycheck, and you may be required to sign a wage deduction authorization form for this purpose.

ASHOE KUNIGAE CAESIMAN

Associate's Printed Name

K I Ashab

Associate's Signature

Lead Consultant

Position

22nd May 2006

Date

MAY-14-02   07:54pm   From-                                   T-769   P.003   F-088

**Kanbay**
*enabling business to excel*

February 12, 2002

*SKKanchusthambham*
*Global hire 11-4-00*

Mr. K.Suresh Kumar
Emp Id 10826

Kanbay Incorporated
6400 Shafer Court
Suite 100
Rosemont, Illinois 60018 USA
Voice: 847.384.6100
Fax: 847.384.0500
www.kanbay.com

Dear Suresh,

We are pleased to offer you the position of a Lead Consultant at Kanbay Incorporated, with a start date of February 18, 2002. During this period, you will report to Steve Stephens. This offer is contingent upon your ability to

(a)     Provide documentation to prove that you are legally eligible to be employed with Kanbay Incorporated in the United States
(b)     Meet and uphold all the terms and conditions in the Nondisclosure, Development and Non-Solicitation Agreement enclosed for your signature.

This offer will become null and void if not accepted within seven (7) calendar days.

Your bi-weekly salary will be $2403.84 (annualized equals $62,500 annual). Your salary will be taxable at source as per local statute. A detailed explanation of Kanbay Incorporated benefits applicable to you during your assignment is included with this letter.

Kanbay is a company of goal oriented professionals working to achieve total customer satisfaction. We know that you will be able to complement our services with your skills and work experience. No personal or Kanbay related professional issues should be discussed with the client. This should be routed through your respective Project Manager. Serious action will be taken for violation of this policy.

Kanbay is an employment-at-will organisation. This means that either you or Kanbay may terminate your employment at any time, for any reason. Kanbay will endeavour to provide to you as much feedback as possible regarding your work performance. In addition, you will continue to be part of Kanbay's performance review process.

We would like to take this opportunity to extend a warm welcome. We look forward to having you work with us at Kanbay. As a means of acceptance, please sign this letter and return one original to Karin Lyon as soon as possible, along with the signed W-4, State Tax form, the Nondisclosure, Development and Non-Solicitation Agreement and the Initial Date entry information form. Completion and submission of these documents is required and critical to ensure your inclusion in the US payroll.

Sincerely,
KANBAY INCORPORATED

*Rick Stewart*

Rick Stewart
Sr. Recruiter NA

*Payroll 3-22-02*

*Pay 5 weeks= 6,009.62*

*Adj vac accrual*

I accept your offer for the position of Lead Consultant with Kanbay Incorporated.

*K.S.*

K.Suresh Kumar

# EXHIBIT C

AIMS - Mercedes



English | Espanol | Help

 Mercedes-Benz Financial Service

Welcome Donald Fay | Home | My Profile | Logout

**Home**    Search    Inventory     BidReady    My Activity    Services    FAQs    | Mercedes-Benz Financial Services

| Mercedes-Benz Financial Services |

MBFS Dealer Sale | Started 10 AM EST | 10 AM EST





**Run# 1-87 2008
Mercedes-Benz C350
Sport**

31,650 Miles

VIN: WDBTJ58H79F1977733
Colo (Ext/Int): Gray/Black

**Current High Bid
$29,100
Current High Bidder**
Mercedes-Benz of Sarasota

 **Bid** $29,300



Vehicle Condition

Next Vehicle Info

**Bid History** | Your Purchases
Mercedes-Benz of Sarasota $ 29,100
Mercedes-Benz of palm Spring $ 28,900
Park Place Motors of Grapevine $ 28,700
Mercedes-Benz Sarasota $ 28,500

Next Vehicle          Run #        WatchList



| | | | |
|---|---|---|---|
| | 2009 MERCEDES SL 400 | 1-88 | |
| | 2009 MERCEDES SL 350 | 1-88 | |
| | 2009 MERCEDES SL 400 | 1-88 | |
| | 2009 MERCEDES SL 400 | 1-88 | |
| | 2009 MERCEDES SL 400 | 1-88 | |
| | 2009 MERCEDES SL 400 | 1-88 | |
| | 2009 MERCEDES SL 400 | 1-88 | |

Our Company      Contact Us      FAQs      Sitemap                    Powered By BidReady™

# EXHIBIT 2

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State. The criminal record data in this product or service may include records that have been expunged, sealed, or otherwise have become inaccessible to the public since the date on which the data was last updated or collected.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

**Your DPPA Permissible Use:** Civil, Criminal, Administrative, or Arbitral Proceedings
**Your GLBA Permissible Use:** Legal Compliance

**Date:** 03/18/13
**Reference Code:** 23834.0022
**Address:** 770 PIMLICON PL, SUWANEE  GA 30024-8535
**Current Ownership:**
Parcel Number - 178-000-517
Book - 4392
Page - 754
Lot Number - 36
Name Owner 1 - KANCHUSTHAMSHAM SURESH KUMAR
Name Owner 2 - MADHURI BONDADA
Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Owner's Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Land Usage - RESIDENTIAL (NEC)
Subdivision Name - DAVES CREEK RURAL
Total Value - $288,870
Land Value - $60,000
Improvement Value - $228,870
Year Built - 2006
Sale Date - 07/27/2006
Sale Price - $355,300
Legal Description - 2-1 858 LT36 UN2 ENCLAVE@ NICHOLS LNDG
Data Source - A
Name Seller 1 - PULTE HM CORP

**Previous Ownership:**
Parcel Number - 178-000-517
Lot Number - 36
Name Owner 1 - KANCHUSTHAMSHAM SURESH KUMAR B
Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Owner's Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Land Usage - SFR
Subdivision Name - DAVES CREEK RURAL
Total Value - $326,820
Land Value - $60,000
Improvement Value - $266,820
Legal Description - 2-1 858 LT36 UN2 ENCLAVE NICHOLS LNDG
Data Source - A

Parcel Number - 178 517
Name Owner 1 - KANCHUSTHAMSHAM SURESH KUMAR
Name Owner 2 - BONDADA MADHURI
Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Owner's Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535

Land Usage - SINGLE FAMILY RESIDENTIAL
Total Value - $326,820
Legal Description - 2-1 858 LT36 UN2 ENCLAVE NICHOLS LNDG
Data Source - B

Book - 4392
Page - 754
Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Land Usage - SINGLE FAMILY RESIDENCE
Sale Date - 07/27/2006
Data Source - B

Book - 4392
Page - 754
Name Owner 1 - KANCHUSTHAMBHAM, SURESH
Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Owner's Address - 7130 MADISON DR, ATLANTA  GA 30346-2453
Land Usage - CONDOMINIUM (RESIDENTIAL)
Sale Date - 07/27/2006
Sale Price - $355,300
Data Source - A
Name Seller 1 - PULTE HM CORP

Parcel Number - 178-000-517
Lot Number - 36
Name Owner 1 - PULTE HOME CORP
Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Owner's Address - 3805 CRESTWOOD PKWY NW, DULUTH  GA 30096-7164
Land Usage - COMMERCIAL (NEC)
Subdivision Name - DAVES CREEK RURAL
Total Value - $60,000
Land Value - $60,000
Legal Description - 2-1 858 LT36 UN2 ENCLAVE NICHOLS LNDG
Data Source - A

**Residential Phones at Address:**
770-844-2103 - - KANCHUSTAMBHAM SURESH - EDT
**Possible Current Residents:**
MR SURESH KUMAR KANCHVSTHAMBHAM - SSN: 672-14-xxxx DOB: 08/30/1971
    **Names Associated with Resident:**
    MR KANCHUSTHAMSHAM SURESH KUMAR
    MR SUREH KAMCHUSTHAMBHAM
    MR SURESH KANCHVSTHAMB
    MR SURESH K KANCHUSTAMBHAM
    MR SURESH KUMAR KANCHUSTHAMSHAM
    MR KANCHUSTHAMBHAM SURESH SURE - SSN: 672-14-xxxx DOB: 08/30/1971
    MR S K KANCHUSTHAMBHAM - SSN: 672-14-xxxx DOB: 08/30/1971
    MR SURESH KANCHUSTHAMBHAM - SSN: 672-14-xxxx
    MR SURESH KANCHVSTHAMBHAM - SSN: 672-14-xxxx DOB: 08/30/1971
    MR SURESH K KANCHUSTHABHAM - SSN: 672-14-xxxx
    MR SURESH K KANCHUSTHAMBHAM - SSN: 672-14-xxxx DOB: 08/30/1971
    MR SURESH K SURE KANCHUSTHAMBHAM - SSN: 672-14-xxxx
    MR SURESH KUMAR KANCHUSTHAMBHAM - SSN: 672-14-xxxx
    MR SURESHKUMAR KANCHUSTHAMBH - SSN: 672-14-xxxx
    MR SUREH KAMCHUSTHAM - SSN: 672-14-xxxx

MS MADHURI BONDADA - SSN: 674-34-xxxx DOB: 05/07/1979

MR ANSHUMAN BHARDWAJ

**Possible Previous Residents:**
MR SRINIVASARAO V KANCHUSTAMBHAM - SSN: 349-04-xxxx DOB: 08/25/1973

**Names Associated with Resident:**
MR S KANCHUSTAMBHAM - SSN: 349-04-xxxx DOB: 08/25/1973
MR SRINI V KANCHUSTAMBHAM - SSN: 349-04-xxxx DOB: 08/25/1973
MR SRINIVASARAO KANCHUSTAMBHAM - SSN: 349-04-xxxx DOB: 08/25/1973
MR SRINIVASA KANCHUSTAMBHAM - SSN: 349-04-xxxx
Current Address: 201 SUMMER DR NE, ATLANTA  GA 30328-6015

VEDAVATHI VEERISETTI - SSN: 531-61-xxxx DOB: 03/26/1977
**Names Associated with Resident:**
VEDA VEERISETTI
VEDAVATHI VECRESETTI - SSN: 531-61-xxxx DOB: 03/26/1977
VEDAVATHI VEERESETTI - SSN: 531-61-xxxx DOB: 03/26/1977
VEDAVATHI VEERSETTI - SSN: 531-61-xxxx DOB: 03/26/1977
Current Address: 635 EARLHAM DR, SUWANEE  GA 30024-8540

MR SURESH DHULIPUDI - SSN: 164-84-xxxx DOB: 08/03/1975
**Names Associated with Resident:**
MR SURESH BHULIPUDI - SSN: 164-84-xxxx DOB: 08/03/1975
MR SURESH DULIBUDI - SSN: 164-84-xxxx DOB: 08/03/1975
MR SURESH VADHI - SSN: 164-84-xxxx DOB: 08/03/1975
Current Address: 635 EARLHAM DR, SUWANEE  GA 30024-8540

SWATHILAKSHMI VILLA - SSN: 905-81-xxxx DOB: 1980
**Names Associated with Resident:**
SWATHILAKS VILLA - SSN: 905-81-xxxx
VILLA SWATHILAKSHMI - SSN: 905-81-xxxx DOB: 1980
Current Address: 201 SUMMER DR NE, ATLANTA  GA 30328-6015

MS PALLAVI POLISHETTY - SSN: 385-31-xxxx DOB: 04/27/1983
Current Address: 1740 OAK AVE UNIT 708, EVANSTON  IL 60201-5989

MR PRASHANTH POLISETTY - SSN: 655-34-xxxx DOB: 10/28/1987
Current Address: 5217 HEATHER DR APT 211, DEARBORN  MI 48126-4189

GARG RAJEEVKUMAR DOB: 11/10/1985
Current Address: SUWANEE

# EXHIBIT 3

The Clerks Authority

- [ Search ]
- [ ]
- contact
- logout
- glossary

File Search  Learn  Manage  Fines & Fees  Clerks  Notary & Aposti

Carbon Registry Index ▼    Lien Index ▼    Notary Index ▼    Plat Index ▼    PT-61 Index ▼    F

# PREMIUM SEARCH  Search > PT-61 Index > Address Sear

**Searched All Counties for 770 PIMLICON PLace**

Remove Checked Results | Filter Checked Results

50 | resu

| | PT-61 Number | Property Address | County | Sale Date | Sale Price | Buyer | Seller |
|---|---|---|---|---|---|---|---|
| ☑ | 058-2008-002340 | 655 Earlham DR | FORSYTH | 3/28/2008 | $199,840.00 | Kanchusthambham, Suresh | Pulte Home Corpo |
| ☑ | 058-2006-008925 | 770 PIMLICON PLACE | FORSYTH | 7/27/2006 | $0.00 | KANCHUSTHAMSHAM, SURESH | KANCHUSTHAMBE SURESH |
| ☑ | 058-2006-008926 | 770 PIMLICON PLACE | FORSYTH | 7/27/2006 | $355,300.00 | KANCHUSTHAMBHAM, SURESH | PULTE HOMI CORPORATIO |

**Display checked PT-61 information** | **Display checked combined index information** | **Display** a

Page 1 of 1
[First Page] [Previous Page] [Next Page] [Last Page]

Search Disclaimer  PT-61 Premium FAQ  Terms of Use  Sitemap  Glossary  Logout  Contact U

GSCCCA

Copyright 2013 © All rights reserved.

**Important:**  The Public Records and commercially available data sources used on reports have errors.  Data is sometimes entered poorly, processed incorrectly and is generally not free from defect.  This system should not be relied upon as definitively accurate.  Before relying on any data this system supplies, it should be independently verified.  For Secretary of State documents, the following data is for information purposes only and is not an official record.  Certified copies may be obtained from that individual state's Department of State.  The criminal record data in this product or service may include records that have been expunged, sealed, or otherwise have become inaccessible to the public since the date on which the data was last updated or collected.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA).  Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

**Your DPPA Permissible Use:**  Civil, Criminal, Administrative, or Arbitral Proceedings
**Your GLBA Permissible Use:**  Legal Compliance

**Date:** 03/18/13
**Reference Code:**  23834.0022
**Address:**  655 EARLHAM DR, SUWANEE  GA 30024-8540
**Current Ownership:**
Parcel Number - 178-000-581
Book - 6310
Page - 466
Name Owner 1 - KANCHUSTHAMBHAM, SURESH
Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Owner's Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Land Usage - SINGLE FAMILY RESIDENCE
Building Size - 2,332 sq. ft.
Sale Date - 05/23/2012
Data Source - A
Name Seller 1 - KANCHUSTHAMBHAM SURESH K

**Previous Ownership:**
Parcel Number - 178-000-581
Book - 5096
Page - 569
Lot Number - 141
Name Owner 1 - KANCHUSTHAMBHAM SURESH K
Name Owner 2 - BHARDWAJ ANSHUMAN
Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Owner's Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Land Usage - RESIDENTIAL (NEC)
Subdivision Name - DAVES CREEK RURAL
Total Value - $207,280
Land Value - $60,000
Improvement Value - $147,280
Year Built - 2008
Sale Date - 03/28/2008
Sale Price - $199,900
Legal Description - 2-1 800 LT 141 UN 2 GLEN@ NICHOLS LNDG
Data Source - A
Name Seller 1 - PULTE HOME CORP

Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Data Source - B

Parcel Number - 178-000-581
Lot Number - 141
Name Owner 1 - KANCHUSTHAMBHAM SURESH KUMAR

Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Owner's Address - 770 PIMLICON PL, SUWANEE  GA 30024-8535
Land Usage - SFR
Subdivision Name - DAVES CREEK RURAL
Total Value - $60,000
Land Value - $60,000
Legal Description - 2-1 800 LT 141 UN 2 GLEN NICHOLS LNDG
Data Source - A

Parcel Number - 178-000-581
Lot Number - 141
Name Owner 1 - PULTE HOME CORP
Address - 655 EARLHAM DR, SUWANEE  GA 30024-8540
Owner's Address - 3805 CRESTWOOD PKWY NW, DULUTH  GA 30096-7164
Land Usage - COMMERCIAL (NEC)
Subdivision Name - DAVES CREEK RURAL
Total Value - $60,000
Land Value - $60,000
Legal Description - 2-1 800 LT 141 UN 2 GLEN NICHOLS LNDG
Data Source - A

**Residential Phones at Address:**
[None Found]
**Possible Current Residents:**
RENE MICHELE TRIANTIS - SSN: 254-27-xxxx DOB: 11/1970
    **Names Associated with Resident:**
    RENE PRITCHARD TRIANTIS - SSN: 254-27-xxxx DOB: 11/01/1970
    RENE SERRATE - SSN: 254-27-xxxx DOB: 11/01/1970
    RENE M PRITCHARD - SSN: 254-27-xxxx DOB: 01/01/1970
    RENE M PRITCHARD - SSN: 254-27-xxxx DOB: 11/1970
    RENE M TRIANTIS - SSN: 254-27-xxxx DOB: 01/01/1970
    RENE M TRIANTIS - SSN: 254-27-xxxx DOB: 11/1970
    RENE MICHELE PRITCHARD - SSN: 254-27-xxxx DOB: 11/01/1970
    RENE MICHELE SERRATE - SSN: 254-27-xxxx DOB: 01/01/1970
    RENE MICHELE TRIANTIS - SSN: 254-27-xxxx DOB: 11/01/1970
    RENE SERRATE - SSN: 254-27-xxxx DOB: 11/1970
    RENE MICHELE SERRATE - SSN: 254-27-xxxx DOB: 11/1970

MR SURESH KUMAR KANCHUSTHAMBHAM
    **Names Associated with Resident:**
    MR SURESH KANCHUSTHAMBHAM
    MR SURESH K KANCHUSTHAMBHAM
    MR SURESH KUM KANCHUSTHAMBHAM

MR ANSHUMAN BHARDWAJ

**Possible Previous Residents:**
MR JOSE MANUEL RUVIRA SR - SSN: 262-97-xxxx DOB: 05/26/1952
    **Names Associated with Resident:**
    MR JOSE RUBIRA - SSN: 262-27-xxxx DOB: 05/26/1952
    MR HOSE M RUVIRA - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE MANUEL RUVIRA JR - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE RUVIRA - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE RUVIRA JR - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE M RIVERA - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE M RUBIRA SR - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE M RUVIRA - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE M RUVIRA SR - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE MANUEL RDVIRA - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE MANUEL RUVIRA - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE MANUEL RUVIRA JR - SSN: 262-97-xxxx DOB: 05/26/1952
    MR JOSE YADUEL RUVIRA SR - SSN: 262-97-xxxx DOB: 05/26/1952

MR JOSE M RUVIRA - SSN: 262-99-xxxx DOB: 05/26/1952
MR JOSE M RUVIRA JR - SSN: 262-99-xxxx DOB: 05/26/1952
MR JOSE M RUVIRA JR - SSN: 262-97-xxxx DOB: 05/26/1952
MR JOSE MANUEL RDVIRA - SSN: 262-97-xxxx DOB: 05/1952
MR JOSE MANUEL RUVIRA JR - SSN: 262-97-xxxx DOB: 05/1952
MR JOSE MANUEL RUVJRA JR - SSN: 262-97-xxxx DOB: 05/26/1952
MR JOSE YADUEL RUVIRA - SSN: 262-97-xxxx DOB: 05/26/1952
Current Address: 14330 SW 38TH ST, MIAMI  FL 33175-7810

MR ISRAEL JAMES SERRATE - SSN: 059-34-xxxx DOB: 01/14/1936
**Names Associated with Resident:**
MR I SERRATE - SSN: 059-34-xxxx DOB: 01/14/1936
MR ISRAEL J SERRATE - SSN: 059-34-xxxx DOB: 01/14/1936
MR ISRAEL JAMES SERRATE - SSN: 059-34-xxxx DOB: 01/01/1936
MR ISRAEL JAMES SERRATE - SSN: 059-34-xxxx DOB: 01/1936
MR JAMES SERRATE - SSN: 059-34-xxxx DOB: 01/14/1936
MR SERRATE ISRAEL JAMES - SSN: 059-34-xxxx DOB: 01/14/1936
MR ISRAEL J SERRATE - SSN: 059-34-xxxx DOB: 01/1936
MR JAMES I SERRATE - SSN: 059-34-xxxx DOB: 01/14/1936
Current Address: 691 YORKSHIRE DR, MARIETTA  GA 30068-5212

MR PAUL T SERRATE - SSN: 558-77-xxxx DOB: 09/27/1967
**Names Associated with Resident:**
MR PAUL SORRATE - SSN: 558-77-xxxx DOB: 09/27/1967
MR PAUL VERRATE - SSN: 558-77-xxxx DOB: 09/27/1967
MR PAUL TOMAS SERRATE - SSN: 558-77-xxxx DOB: 09/27/1967
Current Address: 6010 BUFORD HWY, NORCROSS  GA 30071-2407

# EXHIBIT 4

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State. The criminal record data in this product or service may include records that have been expunged, sealed, or otherwise have become inaccessible to the public since the date on which the data was last updated or collected.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA). Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

**Your DPPA Permissible Use:** Civil, Criminal, Administrative, or Arbitral Proceedings
**Your GLBA Permissible Use:** Legal Compliance

## Property Assessment
**Date:** 05/09/13
**Reference Code:** 23834.0022

| | |
|---|---|
| Name Owner : | **LAKSHMAN ASHOK K** |
| Name Owner 2: | **PRAKASH VANI** |
| Property Address: | **615 EARLHAM DR, SUWANEE  GA 30024-8540** |
| Owner Address: | **615 EARLHAM DR, SUWANEE  GA 30024-8540** |
| County: | **FORSYTH** |
| Data Source: | **A** |

**SALES INFORMATION**

| | |
|---|---|
| Sale Price: | **$237,900** |
| Sale Date: | **10/19/2007** |
| Seller Name : | **PULTE HOME CORP** |
| Recording Date: | **10/24/2007** |
| Book: | **4934** |
| Page: | **2** |
| Loan Amount: | **$237,900** |
| Loan type: | **CONVENTIONAL** |
| Lender Name: | **PULTE MTG LLC** |

**TAX AND ASSESSMENT INFORMATION**

| | |
|---|---|
| Parcel Number: | **178-000-577** |
| Document Number: | |
| Legal Description: | **2-1 800 LT 137 UN 2 GLEN@ NICHOLS LNDG** |
| Subdivision Name: | **DAVES CREEK RURAL** |
| Land Usage: | **RESIDENTIAL (NEC)** |
| Market Land Value: | **$60,000** |
| Market Improvement Value: | **$156,970** |
| Total Market Value: | **$216,970** |
| Assessed Value: | **$86,788** |
| Tax Year: | **2011** |
| Tax Amount: | **$2,223.00** |
| Homestead Exemption: | **Yes** |

**PROPERTY CHARACTERISTICS**

| | |
|---|---|
| Year Built: | **2007** |
| Land Size: | **8,712 Square Feet** |
| Living Size: | **2,332 Square Feet** |
| Number Bedrooms: | **4** |
| Number Full Baths: | **3** |
| Number Half Baths: | |
| Number of Stories: | **1** |
| Exterior Walls: | **MASONITE** |
| Heating: | **GAS** |
| Building Area: | **2332;** |
| No. of Buildings: | **1** |
| Acres: | **0.2 AC** |

Name Owner :            **LAKSHMAN ASHOK K & PRAKASH VANI**
Property Address:       **615 EARLHAM DR, SUWANEE  GA 30024-8540**
Owner Address:          **615 EARLHAM DR, SUWANEE  GA 30024-8540**
County:                 **FORSYTH**
Data Source:            **B**

**SALES INFORMATION**
Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**
Parcel Number:          **178 577**
Document Number:
Legal Description:      **2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG**
Subdivision Name:
Land Usage:             **SINGLE FAMILY RESIDENTIAL**
Market Land Value:      **$60,000**
Market Improvement Value: **$156,970**
Total Market Value:     **$216,970**
Assessed Value:         **$86,788**
Tax Year:               **2011**
Tax Amount:             **$2,223.25**
Homestead Exemption:

**PROPERTY CHARACTERISTICS**
Year Built:
Land Size:              **8712 SF**
Living Size:
Number Bedrooms:
Number Full Baths:
Number Half Baths:
Number of Stories:

Name Owner :            **LAKSHMAN ASHOK K & PRAKASH VANI**
Property Address:       **615 EARLHAM DR, SUWANEE  GA 30024-8540**
Owner Address:          **615 EARLHAM DR, SUWANEE  GA 30024-8540**
County:                 **FORSYTH**
Data Source:            **B**

**SALES INFORMATION**
Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**
Parcel Number:          **178 577**
Document Number:
Legal Description:      **2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG**
Subdivision Name:
Land Usage:             **SINGLE FAMILY RESIDENTIAL**
Market Land Value:      **$60,000**
Market Improvement Value: **$156,970**
Total Market Value:     **$216,970**
Assessed Value:         **$86,788**
Tax Year:
Tax Amount:
Homestead Exemption:

**PROPERTY CHARACTERISTICS**

Year Built:
Land Size:                    8712 SF
Living Size:
Number Bedrooms:
Number Full Baths:
Number Half Baths:
Number of Stories:

---

Name Owner :                  **LAKSHMAN ASHOK K**
Name Owner 2:                 **PRAKASH VANI**
Property Address:             **615 EARLHAM DR, SUWANEE  GA 30024-8540**
Owner Address:                **615 EARLHAM DR, SUWANEE  GA 30024-8540**
County:                       **FORSYTH**
Data Source:                  **A**

**SALES INFORMATION**
Sale Price:                   **$237,900**
Sale Date:                    **10/19/2007**
Recording Date:               **10/24/2007**
Book:                         **4934**
Page:                         **2**
Loan Amount:                  **$237,900**
Loan type:                    **CONVENTIONAL**
Lender Name:                  **PULTE MTG LLC**

**TAX AND ASSESSMENT INFORMATION**
Parcel Number:                **178-000-577**
Document Number:
Legal Description:            **2-1 800 LT 137 UN 2 GLEN@ NICHOLS LNDG**
Subdivision Name:             **DAVES CREEK RURAL**
Land Usage:                   **SFR**
Market Land Value:            **$60,000**
Market Improvement Value:     **$156,970**
Total Market Value:           **$216,970**
Assessed Value:               **$86,788**
Tax Year:                     **2010**
Tax Amount:                   **$2,060.36**
Homestead Exemption:          **Yes**

**PROPERTY CHARACTERISTICS**
Year Built:                   **2007**
Land Size:                    **8,712 Square Feet**
Living Size:                  **2,332 Square Feet**
Number Bedrooms:              **4**
Number Full Baths:            **3**
Number Half Baths:
Number of Stories:            **1**
Exterior Walls:               **MASONITE**
Heating:                      **GAS**
Building Area:                **2332;**
No. of Buildings:             **1**
Acres:                        **0.2 AC**

---

Name Owner :                  **LAKSHMAN ASHOK K & PRAKASH VANI**
Property Address:             **615 EARLHAM DR, SUWANEE  GA 30024-8540**
Owner Address:                **615 EARLHAM DR, SUWANEE  GA 30024-8540**
County:                       **FORSYTH**
Data Source:                  **B**

**SALES INFORMATION**
Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**

Parcel Number:                    **178 577**
Document Number:
Legal Description:                **2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG**
Subdivision Name:
Land Usage:                       **SINGLE FAMILY RESIDENTIAL**
Market Land Value:                **$60,000**
Market Improvement Value:         **$164,770**
Total Market Value:               **$224,770**
Assessed Value:                   **$89,908**
Tax Year:
Tax Amount:
Homestead Exemption:

**PROPERTY CHARACTERISTICS**

Year Built:
Land Size:                        **8712 SF**
Living Size:
Number Bedrooms:
Number Full Baths:
Number Half Baths:
Number of Stories:

---

Name Owner :                      **LAKSHMAN ASHOK K**
Name Owner 2:                     **PRAKASH VANI**
Property Address:                 **615 EARLHAM DR, SUWANEE  GA 30024-8540**
Owner Address:                    **615 EARLHAM DR, SUWANEE  GA 30024-8540**
County:                           **FORSYTH**
Data Source:                      **A**

**SALES INFORMATION**

Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**

Parcel Number:                    **178-000-577**
Document Number:
Legal Description:                **2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG**
Subdivision Name:                 **DAVES CREEK RURAL**
Land Usage:                       **SFR**
Market Land Value:                **$60,000**
Market Improvement Value:         **$164,770**
Total Market Value:               **$224,770**
Assessed Value:                   **$89,908**
Tax Year:                         **2009**
Tax Amount:                       **$2,075.17**
Homestead Exemption:              **Yes**

**PROPERTY CHARACTERISTICS**

Year Built:
Land Size:                        **8,712 Square Feet**
Living Size:
Number Bedrooms:
Number Full Baths:
Number Half Baths:
Number of Stories:
Acres:                            **0.2 AC**

---

Name Owner :                      **LAKSHMAN ASHOK K & PRAKASH VANI**
Property Address:                 **615 EARLHAM DR, SUWANEE  GA 30024-8540**

Owner Address:          615 EARLHAM DR, SUWANEE  GA 30024-8540
County:                 FORSYTH
Data Source:            B

**SALES INFORMATION**
Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**
Parcel Number:              178 577
Document Number:
Legal Description:          2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG
Subdivision Name:
Land Usage:                 SINGLE FAMILY RESIDENTIAL
Market Land Value:          $60,000
Market Improvement Value:   $174,370
Total Market Value:         $234,370
Assessed Value:             $93,748
Tax Year:
Tax Amount:
Homestead Exemption:

**PROPERTY CHARACTERISTICS**
Year Built:
Land Size:                  8712 SF
Living Size:
Number Bedrooms:
Number Full Baths:
Number Half Baths:
Number of Stories:

---

Name Owner :            LAKSHMAN ASHOK K
Name Owner 2:           PRAKASH VANI
Property Address:       615 EARLHAM DR, SUWANEE  GA 30024-8540
Owner Address:          615 EARLHAM DR, SUWANEE  GA 30024-8540
County:                 FORSYTH
Data Source:            A

**SALES INFORMATION**
Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**
Parcel Number:              178-000-577
Document Number:
Legal Description:          2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG
Subdivision Name:           DAVES CREEK RURAL
Land Usage:                 SFR
Market Land Value:          $60,000
Market Improvement Value:   $174,370
Total Market Value:         $234,370
Assessed Value:             $93,748
Tax Year:                   2008
Tax Amount:                 $1,990.61
Homestead Exemption:        Yes

**PROPERTY CHARACTERISTICS**
Year Built:
Land Size:                  8,712 Square Feet
Living Size:
Number Bedrooms:
Number Full Baths:

Number Half Baths:
Number of Stories:
Acres:                              0.2 AC

Name Owner :                        **PULTE HOME CORP**
Property Address:                   **615 EARLHAM DR, SUWANEE  GA 30024-8540**
Owner Address:                      **3805 CRESTWOOD PKWY NW, DULUTH  GA 30096-7164**
County:                             **FORSYTH**
Data Source:                        **A**

**SALES INFORMATION**
Sale Price:
Sale Date:
Recording Date:
Book:
Page:

**TAX AND ASSESSMENT INFORMATION**
Parcel Number:                      **178-000-577**
Document Number:
Legal Description:                  **2-1 800 LT 137 UN 2 GLEN NICHOLS LNDG**
Subdivision Name:                   **DAVES CREEK RURAL**
Land Usage:                         **COMMERCIAL (NEC)**
Market Land Value:                  **$60,000**
Market Improvement Value:
Total Market Value:                 **$60,000**
Assessed Value:                     **$24,000**
Tax Year:                           **2007**
Tax Amount:                         **$540.66**
Homestead Exemption:

**PROPERTY CHARACTERISTICS**
Year Built:
Land Size:                          **8,712 Square Feet**
Living Size:
Number Bedrooms:
Number Full Baths:
Number Half Baths:
Number of Stories:
Acres:                              0.2 AC

# EXHIBIT 5

Agent Basic Info



**Residential Detached**
Pending Sale
#: 5138731    Broker: JEET01
770 Pimlicon Place
County: Forsyth
Subd/Complex: Nichols Landing Enclave

| Lvls | Bdrms | Baths | Hlf Bth |
|------|-------|-------|---------|
| Upper | 4 | 2 | 0 |
| Main | 1 | 1 | 0 |
| Lower | 1 | 1 | 0 |
| Total | 6 | 4 | 0 |

Elem: Settles Bridge
Middle: Riverwatch
High: Lambert

Availability: Conditions Exist: See Priv Rmrks    $375,000
Area: 221    PPVT

State: Georgia
Zip: 30024-8535

City: Suwanee
Age Desc: Resale

Yr Built: 2006
Lake: None
Stories: 2 Or + Stories
Style: Traditional

School Bus Route Elem:
School Bus Route Middle:
School Bus Route High:

**Directions:** 400 N TO EXIT 11 TURN RT, TRAVEL APPROX 3MI TO RT ON OLD ALPHARETTA RD,TRAVEL 2.4MI TO LT ON 141 . GO 1 MI AND TURN RT ON SHARON RD, LT ON NICHOLS RD RT ON STOP SIGN, RT ON MARYLEBOYE TO 1ST MAYFAIR/MANETTE LEFT ON PIMLICON PL. HOME ON LT.

**Public:** Pristine home w/3 fin lvls boasting the finest of upgrades & features @ every turn! High-end finishes t'out. Kitchen & Mstr Bath remodel. Amazing fin terr lvl offers a In-law Ste if needed. Gorgeous! patio, lush landscaping & fenced in backyard, Perfect for discriminating buyers!

**Private:** In case I show this Listing to your client, the Seller will pay $ 1000 commission to Selling Broker.

---

## Features

**Bedroom:** Bdrm On Main Lev
**Master Bath:** Garden Tub, Sep Tub/Shower, Vaulted Ceilings
**Kitchen:** Breakfast Area, Breakfast Bar, Cabinets Stain, Counter Top - Stone, Island, Pantry - Walk-in, View To Fmly Rm

**Dining:** Separate Dng Rm
**Const:** Brick & Frame, Cement Siding - Not Stucco
**Parking:** 2 Car Garage, Attached, Auto Garage Door, Kitchen Level
**Road:** Paved, Public Maintain
**Rooms:** Exercise Room, Family Room, Media Room, Recreation Room, Separate Lvng Rm, Wine Cellar

**Basement:** Daylight, Finished, Full
**Lot Size:** Under 1/3 Acre
**Lot Desc:** Level, Level Driveway
**Ngh. Amenities:** Homeowners Assoc, Playground, Sidewalk, Street Lights, Swimming Pool, Tennis Lighted, Undergrnd Utils

**Appliance Desc:** Dishwasher, Energy Star Appliances, Garbage Disposal, Gas Water Heater, Microwave, Self-Clean Oven, Smoke/Fire Alarm

**Interior:** 9 ft + Ceil Main, 9 ft+ Ceil Upper, 2-Story Foyer, Bookcases, Entrance Foyer, Hardwood Floors, High Speed Internet Available, Trey Ceilings, Walk-In Closet(s), Wall/Wall Carpet
**Exterior:** Deck, Fenced Yard, Patio, Prof Landscaping, Satellite Dish

**Fireplace:** Factory Built, Gas Starter, In Great/Fam Room
**Cooling Desc:** Central Electric, Zoned
**Laundry Feat:** Downstairs, Laundry Room

**# FP:** 1

Waterfront: 0
Dock:
Pool: None

Lot Dimensions: .19

Heat Type: Gas, Zoned

Sewer Desc: Pub Swr Connectd

---

## Legal, Tax and Office Information

**Tax ID:** 178-000-517    Lot: 36    Plat Book/Page: 0/0    Deed Book/Page:
**Special:** None

Show Inst: Anytime Access, Lockbox - Supra, Vacant
Sq Ft/Sq Ft Source: 3,067 / Tax Record
HOA Rent Restrictions N
Owner Name: Suresh Kumar
Agent License#: 261581
List Agent ID: SHARMASU
Co-List Agent ID:
Firm License#: H-54504
Office: SOUTHERN BEES REALTY, INC.
List Date: 04/24/2013    Days to Exp:
Exp Date:    Exp DOM:    Offer Date:

Annual Master Assoc. Fee Desc
Annl Assoc Fee: / Required
Owner Phone:
Selling Commission: 2.5
Agent: SUSHMA SHARMA
Co-Agent:
Phone/Fax: 770-614-0935 / 678-513-2968
Selling Agent/Broker may present offers directly to Seller?: N
List Agent Email: ssushma@bellsouth.net

Tax/Tax Yr: $2,840 / 2012
Init. Fee:
Swim/Tennis: $475
VRC: N
Phone/Fax: 678-898-2662/678-513-2968
Phone/Fax:
Duplicate FMLS #:

Auction Date:    WD Date:    WD DOM:

**Sold Information**

Sale Price:    Due Diligence    Closing Date:    Binding Agreement Date: 05/13/2013
Original List Price: $375,000    Prop Closing Date: 06/15/2013    DOM:    Total DOM:
SP/OLP %:    Costs Paid by Seller:    Terms:
Sell Agent ID: SKODELA    Sell Agent: Srinivasa Kodela    Lender Mediated:    Sell Office: VRPP01
Wednesday, May 29, 2013    4:39 PM    Requested By: ROSALYN CHAMBLISS

The accuracy of all information, regardless of source, including but not limited to square footage, is deemed reliable but not guaranteed and should be verified through personal inspection by and/or with the appropriate professionals. Copyright 2002-2012 FMLS

770 Pimlicon Place, Suwanee, GA 30024 (MLS# 5138731) - Suwanee GA Real Estate - ...   Page 1 of 3



**ColdwellBankerAtlanta.com**
Search over 78,800 real estate listings for sale in the metro Atlanta area

Careers    Contact Us    About Us

Property Search    Agents & Offices    New Homes    Buying Your Home    Selling Your Home

Welcome, Guest    [ Sign In ]    Save Searches, Listings, and get Email Alerts    My Properties    My Searches    **HOMEBASE** inbox

Home > Georgia > Forsyth County > Suwanee > 770 Pimlicon Place

## Property Detail

Learn more about Suwanee, GA

### Similar Listings

Property Details    Maps & Directions    Community Info    Nearby Schools

**770 Pimlicon Place**
**Suwanee, GA 30024**

Sale Pending



< Prev    1 of 25    Next >

         

[ 1-10 ]  [ 11-20 ]  [ 21-25 ]

View All Large Photos

Pristine home w/3 fin lvls boasting the finest of upgrades & features @ every turn! High-end finishes t'out. Kitchen & Mstr Bath remodel. Amazing fin terr lvl offers a In-law Ste if needed. Gorgeous! patio, lush landscaping & fenced in backyard. Perfect for discriminating buyers!

#### Basic Information

| | |
|---|---|
| Price: | $375,000 |
| Type: | Single Family |
| Bedrooms: | 6 |
| Bathrooms: | 4 Full |
| Garage: | 2 |
| Carport: | |
| County: | Forsyth |
| MLS ID: | 5138731 |

Request More Information

Schedule a Showing

#### School Information

| | |
|---|---|
| Elementary: | Settles Bridge Elementary School |
| Middle: | Riverwatch Middle School |
| High: | Lambert High School |

#### Interior Features

| | |
|---|---|
| Full Baths: | 4 |
| Bath Description: | Garden Tub,Sep Tub/Shower,Vaulted Ceilings |
| Appliances: | Dishwasher, Energy Star Appliances, Garbage Disposal, Gas Water Heater, Microwave, Self-Clean Oven, Smoke/Fire Alarm |

#### Mortgage Calculator

| | |
|---|---|
| Price | $375,000 |
| Down Payment | ● 20% ↓ |
| | ○ $75,000 |
| Interest Rate | 3.75% |
| Term | ● 30 years ○ 15 years |
| Annual Taxes | $2,840 |
| Annual Insurance | |

Estimate Payment

### Similar Listings


3477 Castleberry Road
Cumming, GA
$380,000 | 6 Beds | 3+ Baths


1869 Noblin Woods Trail Nw
Duluth, GA
$369,900 | 6 Beds | 4 Baths


1884 Noblin Woods Trail
Duluth, GA
$369,500 | 6 Beds | 4 Baths


5690 Devonshire Way
Cumming, GA
$375,000 | 6 Beds | 5 Baths


6580 Britannia Place
Cumming, GA
$375,000 | 6 Beds | 5 Baths

Listings identified with the FMLS IDX logo come from FMLS, are held by brokerage firms other than the owner of this website and the listing brokerage is identified in any listing details. Information is deemed reliable but is not guaranteed. First Multiple Listing Service, Inc.

| | | |
|---|---|---|
| **Bedroom 1 Desc:** | Bdrm On Main Lev | **$1,626 per month** |
| **Kitchen Description:** | Breakfast Area, Breakfast Bar, Cabinets Stain, Counter Top - Stone, Island, Pantry - Walk-in, View To Fmly Rm | $75,000 down, $300,000 mortgage |
| **Laundry Description:** | Downstairs, Laundry Room | |
| **Dining Room Desc:** | Separate Dng Rm | |
| **Fireplaces:** | 1 | Listed By: SOUTHERN BEES REALTY, INC. |



View Larger Map | Get Driving Directions

| | |
|---|---|
| **Cooling Type:** | Central Electric, Zoned |
| **Heating Delivery:** | Gas, Zoned |
| **Style:** | Traditional |
| **Stories:** | 2 Or + Stories |
| **Year Built:** | 2006 |

## Additional Information

| | |
|---|---|
| **Water Type:** | Public Water |
| **Sewer Type:** | Pub Swr Connectd |
| **Neighborhood:** | Nichols Landing Enclave |
| **County:** | Forsyth |
| **Area:** | 221 - Forsyth County |

## Lot Features

| | |
|---|---|
| **Lot Size:** | Under 1/3 Acre |
| **Lot Description:** | Level, Level Driveway |
| **Lot Size Dimensions:** | 0.19 |
| **Property View:** | Other |
| **Road Frontage Desc:** | Paved, Public Maintain |

## Exterior Features

| | |
|---|---|
| **Neighborhood Amenities:** | Homeowners Assoc, Playground, Sidewalk, Street Lights, Swimming Pool, Tennis Lighted, Undergrnd Utils, Swimming Pool |
| **Pool Description:** | None |
| **Construction Type:** | Brick & Frame, Cement Siding - Not Stucco |

## Financial Considerations

| | |
|---|---|
| **Price:** | $375,000 |

| | |
|---|---|
| **Tax Amount:** | $2,840 |
| **Tax Year:** | 2012 |

**Link to This Listing:** http://www.coldwellbankeratlanta.com/ID/1641522    **Originally Received:**

4/25/2013 (34 days ago)    **Last Refreshed:**

5/29/2013 12:29 PM    **Total Views: 72**  (as of 5/28/2013)

### Nearby Listings    Real estate for sale near 770 Pimlicon Place

765 Pimlicon Place #N/A
Suwanee, GA 30024
$1,700
4 Beds | 2+ Baths

765 Pimlicon Pl
Suwanee, GA 30024
$1,700
4 Beds | 2+ Baths

750 Mayfair Ct
Suwanee, GA 30024
$285,000
4 Beds | 3+ Baths

640 Pimlicon Place
Suwanee, GA 30024
$294,900
5 Beds | 3+ Baths

Listings identified with the FMLS IDX logo come from FMLS, are held by brokerage firms other than the owner of this website and the listing brokerage is identified in any listing details. Information is deemed reliable but is not guaranteed. First Multiple Listing Service, Inc.

**Newest Listings in Suwanee, GA**
3350 Chartwell Ln $345,000
5001 Tottenham Ct $325,000
7965 Georgetown Circle $649,900
3411 Lake McGinnis Drive $319,000
3575 Hickory Branch Trail $1,995

**Cities & Communities near Suwanee, GA**
Sugar Hill (221)
Buford (820)

770 Pimlicon Place, Suwanee, GA  30024 (MLS# 5138731) is a Single Family property with 6 bedrooms, 4 full bathrooms. 770 Pimlicon Place is currently listed for $375,000 and was originally received on Thursday, April 25 2013. Want to learn more about 770 Pimlicon Place? Do you have questions about finding other Single Family real estate for sale in Suwanee? Contact a Coldwell Banker Residential Brokerage agent to request more information. You can also browse all Suwanee real estate listings.

Coldwell Banker Residential Brokerage, 6285 Barfield Road NE, Suite 100, Atlanta, GA 30328, 404-705-1782 or 866-744-8959
The property information herein is derived from various sources that may include, but not be limited to, county records and the Multiple Listing Service and it may include approximations. Although the information is believed to be accurate, it is not warranted and you should not rely upon it without personal verification.

Home | Careers | Contact Us | About Us | Site Map | Our Fair Housing Pledge | Terms & Conditions | Privacy Statement | Consumer Fraud Alert

Property Search | Agents & Offices | New Homes | Buying Your Home | Selling Your Home

Georgia Real Estate | Georgia Condos | Georgia Realtors | Georgia Rentals | Atlanta Real Estate | Atlanta Condos | Atlanta Realtors | Atlanta Rentals | National Real Estate

Suwanee Real Estate | Suwanee Condos | Suwanee Realtors | Suwanee Rentals

Some community, school, and location information powered by Onboard Informatics (www.onboardinformatics.com). Information presented on these web pages is deemed reliable but is not guaranteed and should be independently verified by the users of this site. Onboard Informatics makes no warranty, either expressed or implied, as to the accuracy of the data contained within or obtained from this Web Page

©2013 Coldwell Banker Residential Brokerage All rights reserved. Operated by a subsidiary of NRT LLC. Equal Housing Opportunity, ⌂ Equal Housing Lender. Unauthorized duplication, use, or linkage is prohibited.

# EXHIBIT 6

## Section 2 – Employment Related

### *Outside Employment*

A career at the Company is demanding. Individuals in professional client service and practice support roles need to give full attention to the Company's business, and in accepting a professional position one agrees to give his or her best efforts to the business of the Company. No individual shall, except on behalf of the Company with all fees payable to the Company, provide consulting services for a fee or otherwise act in competition with the Company.

Employees owe a duty of loyalty to the Company. It is expressly understood that any attempt to develop business while employed by the Company on Company time or for which Company resources are used is solely for the benefit of the Company, and if an employee leaves the Company prior to the Company obtaining the business, any business relation with the client or prospective client subsequently developed within a two-year period following the employee leaving the Company shall be deemed for the benefit of the Company. In the event the Company determines that a former employee used Company time or resources to develop business other than for the benefit of the Company, then in addition to any remedies it may have in law or equity, the Company may seek from the former employee an accounting to pay over to the Company all fees directly or indirectly received from such client or prospective client.

Professional activities such as teaching, writing, and speaking engagements are encouraged by the Company. Any compensated outside activity should be discussed in advance with the appropriate business area leader, and receive prior written approval. The extent to which an individual should participate in such activities may depend on his or her own stage of professional advancement. Time requirements must be taken into consideration to ensure that the activity will not unduly infringe on Company-related responsibilities. Incidental income from such activities may be retained by the individual when the activities are performed substantially outside regular working hours. However, when the activity involves the assistance of other Company personnel, or requires substantial time during regular office hours, the resulting income will be Company income.

This policy applies to all employees of the company.

Last Revised: 1-26-09
Replaces: 04-15-04 version

**Document End**

# EXHIBIT 7



"

**Independence has been an objective at Capgemini since its creation more than forty years ago. It's a measure of our freedom and objectivity."**

Cyril GARCIA
Strategy and
Transformation

# 3.3 Conflicts of interest

We must be careful not to take actions that may conflict with the Group's interests or could lead to damaging its reputation.

## WHAT DOES THIS MEAN?

> **Loyalty and good faith.** As an employee of the Group, we are bound by a duty of loyalty and the obligation to act in good faith.

> **Conflicts of interest.** A potential conflict of interest arises when we have several contradictory interests at the same time. When a personal interest is in contradiction to the Group's interests, we risk violating our duty of loyalty. This occurs any time the potential for direct or indirect personal gain can or does influence a decision connected to our business. Consequently, we must avoid situations where our personal interests could conflict with the Group's interests.

## WHAT IS EXPECTED OF ME?

> I must not engage in outside activities that compete with the Group or assist a Group competitor.

> I must report any potential conflict of interest to my team leader or human resources manager.

> I must award business solely on the basis of merit and not on the basis of personal relationships or potential personal gain.

> I must not use or disclose any business information or opportunities obtained through my work for personal advantage or personal gain.

> If I am unsure whether my interest puts me in a potential situation of conflict of interest, I should discuss the matter with my team leader.

## PRACTICAL EXAMPLES

**My partner works for a competitor. What should I be aware of?**
You should be aware that this is an extremely sensitive situation and should be disclosed in writing to your manager. If you and your partner discuss any business information whatsoever you risk violating the competition laws in your country. Both you and your partner could be committing a criminal act if you discuss pricing or business opportunities.
You should know what these laws are and, if you have any doubt whatsoever about them, consult your Country's Ethics & Compliance Officer.
In addition, discussing business information with your partner may violate confidentiality obligations.

**One of my close family relations works at a leading recruitment agency that we often use. Is this a potential conflict of interest?**
It depends on several factors such as the individual handling the agency in question, what your role is, or what your close relation's role is. Because this situation presents a potential conflict of interest, you should be transparent about the issue and notify your team leader. Appropriate measures should be taken, such as ensuring you are not involved on the account, to avoid any appearance of a conflict of interest.





**DISCUSS OPENLY AND SHARE YOUR CONCERNS:** If you are facing an issue involving a conflict of interest, do not keep it to yourself. You will get help and support by discussing it with your team leader or your human resources manager.

# EXHIBIT 8

**Silver, Gerry**

**Subject:**                        FW: Update: Communications

**BDS.EmailID:**              db63341ea2b448c4b7be74375f956849

-----Original Message-----
From: Suresh KK [mailto:kmacs.com@gmail.com]
Sent: Wednesday, January 02, 2013 11:20 AM
To: Sanders, Brooke A
Cc: Krish, Srini
Subject: Update: Communications

Brooke, Srini,

There is family emergency in India, my father not doing well and admitted in hospital couple of days ago. We are leaving to India today and will be there at least for couple of weeks to take care of the situation with my father. My family also traveling, so I will not have phone access during this period. If anything need or communicate to me please use this email. I will respond to them as soon as I access emails.

Suresh

# EXHIBIT 9

**Silver, Gerry**

**Subject:**                    FW: outstanding expenses

**BDS.EmailID:**              8e5a00143c8c446f833422a838e438c6

**From:** Ashok Lakshman [mailto:aklakshman05@gmail.com]
**Sent:** Tuesday, May 21, 2013 6:08 PM
**To:** Ryan, Bonnie
**Subject:** Re: ourstanding expenses

Hi Bonnie,

I am extremely sorry for the delayed response. Hope you are doing well.

I did not checked the emails for so long. I am out of country due to personal reasons. I do recall the expenses.
He shared the sheet, but it was in my Manheim laptop. I do not have a copy of the details. From my
understanding all expenses were approved by Srini Krish from August 2012.

Please let me know if you need more details.

Thanks
Ashok

On Tue, Mar 19, 2013 at 5:32 PM, Ryan, Bonnie <bonnie.ryan@capgemini.com> wrote:

Hi Ashok,


If you would be so kind as to respond to my email below, I would greatly appreciate it.

Best regards,

Bonnie


_____

**From:** Ryan, Bonnie
**Sent:** Tuesday, February 12, 2013 10:58 AM
**To:** 'Ashok Lakshman'
**Subject:** ourstanding expenses


Hi Ashok,

1

I hope you are keeping well.


I hope you can help me.  Srinivas is claiming 870.00 in expenses from a Manheim lunch with snacks, etc...He stated that he provided you with the a s/sht of the expenses.  Do you by chance recall what this was for and who would have approved the expenses?


Any insight would be greatly appreciated.

Thanks,

Bonnie


This message contains information that may be privileged or confidential and is the property of the Capgemini Group. It is intended only for the person to whom it is addressed. If you are not the intended recipient, you are not authorized to read, print, retain, copy, disseminate, distribute, or use this message or any part thereof. If you receive this message in error, please notify the sender immediately and delete all copies of this message.

# EXHIBIT 10

--------------------------------------------------------------------------------

-----Original Message-----
From: orders@mlqattorneyservices.com [mailto:orders@mlqattorneyservices.com]
Sent: Wednesday, May 29, 2013 9:15 AM
To: Chambliss, Angela O.
Subject: Notification RE: Your File No.: - K-Macs, LLC


Our Job#: 336925
Status Notification From MLQ Attorney Services
Subject: K-Macs, LLC
Date: 05/28/2013
Time: 18:48
Address: 770 Pimilcon Place
  Suwanee GA 30024
Event: LARGE STACK OF NEWSPAPERS, HOME FOR SALE, HOME MOSTLY EMPTY BUT NOT COMPLETELY, NEIGHBOR ACCROSS STREET STATES THEY MOVED TO INDIA.PLEASE ADVISE.

Note:
This message and any attachments from the law firm Arnall Golden Gregory LLP may contain CONFIDENTIAL and legally protected information.  If you are not the addressee and an intended recipient, please do not read, copy, use or disclose this communication to others; also, please notify the sender by replying to this message, and then delete it from your system.  Thank you.

1

# EXHIBIT 11

| | |
|---|---|
| **From:** | Mehta, Sujit <sujit.mehta@capgemini.com> |
| **Sent:** | Friday, February 22, 2013 1:59 AM |
| **To:** | Mangalvedhekar, Milind <milind.mangalvedhekar@capgemini.com> |
| **Subject:** | FW: AIMS Datamodel changes/queries |
| **Attach:** | Bid Ready.doc |

---

**Sujit Mehta / Capgemini India / Pune**
Technology Services
Telephone: +91 20 27601000 Ext: 2016540 / Mobile: +91 90110-SUJIT (78548)
Address, A1, Technology Park, MIDC Talwade, Pune 412 114

 **People matter, results count**
www.in.capgemini.com

 Please consider the environment and do not print this out unless absolutely necessary. Capgemini encourages environmental awareness.

**From:** Kannan, Sujith
**Sent:** Tuesday, June 05, 2012 10:17 AM
**To:** Mehta, Sujit
**Cc:** Gangan, Kaushik R
**Subject:** FW: AIMS Datamodel changes/queries

FYI

---

Thanks and regards,
Sujith Kannan/ Capgemini India/ Pune
+91 20 27601000 Extn: 11203

 **Together. Free your energies**

 Please consider the environment and do not print this email unless absolutely necessary. Capgemini encourages environmental awareness.

**From:** Thoppan, Saravanan (MAN-Corporate-CON) [mailto:Saravanan.Thoppan@Manheim.com]
**Sent:** Tuesday, June 05, 2012 7:41 AM
**To:** Kannan, Sujith
**Cc:** Lakshman, Ashok (MAN-Corporate-CON); Gangan, Kaushik R; Deshmukh, Abhijit
**Subject:** RE: AIMS Datamodel changes/queries

Sujith,

Please find the Bid Ready functionality attached.

Thanks,
Saravanan

**From:** Kannan, Sujith [mailto:sujith.kannan@capgemini.com]
**Sent:** Monday, June 04, 2012 9:51 AM

-------- Original Message --------
Subject: Srinivas Status Report from 11.19 - 11.23.12
From: <srinivas@bidready.net>
Date: Fri, November 23, 2012 1:23 pm
To: lakshman@bidready.net, "Ashok Lakshman" <ashok.lakshman@gmail.com>
Cc: suresh@k-macs.com

Ashok,.
Good Afternoon..
Here the my week status report.Let me know if u have any questions.

1.Coordinate with Offshore QA activites.
2.Attended the Daily QA Offshore Call
3.Covered most of pages navigations with PSD files.
4.Logged Major/Minor defects in QA defects tracker doc.
5.Attended the Onsite Demo's
6.Executing the Functional Test cases with all available pages.

| Status | Count of Test Cases |
|--------|---------------------|
| Blocked | 47 |
| Fail | 93 |
| Pass | 175 |
| Total | 315 |

| Page Name | Blocked | Fail | Pass | Total |
|-----------|---------|------|------|-------|
| Admin Page | 4 | | 11 | 15 |
| Admin: Manage Users | | | 2 | 2 |
| BidReady Page | 1 | | | 1 |
| Contact Us Page | 8 | 12 | 18 | 38 |
| Dealer Approved email | | | 2 | 2 |

1/26/12                              Workspace Webmail :: Print

| Dealer Login Page | 4 | 3 | 20 | 27 |
|---|---|---|---|---|
| Dealer: Email | | | 1 | 1 |
| Dealer: Home | | | 3 | 3 |
| Dealer: Registration | | | 1 | 1 |
| FAQ Page | 5 | 4 | 8 | 17 |
| Home Page | 3 | 12 | 9 | 24 |
| Inventory Page | 6 | 14 | 5 | 25 |
| My Activity Page | 11 | 4 | 12 | 27 |
| Search Page | 5 | 44 | 83 | 132 |
| **Total** | 47 | 93 | 175 | **315** |

Thanks,

Srinivas.

Copyright © 2003-2012. All rights reserved.

-------- Original Message --------
Subject: Upto date Defects docs.
From: <srinivas@bidready.net>
Date: Thu, November 15, 2012 1:53 pm
To: lakshman@bidready.net
Cc: suresh@k-macs.com

Ashok..
Att with upto date QA has been opened the defects in the defects tracker doc.Let me
know if u have any quertions.

Thanks.
Srinivas.

Copyright © 2003-2012. All rights reserved.